PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ALAN PAUL STRIEPER,

*Defendant-Appellant.*

No. 10-5060

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Mark S. Davis, District Judge.
(2:10-cr-00061-MSD-TEM-1)

Argued: October 26, 2011

Decided: January 23, 2012

Before TRAXLER, Chief Judge, and SHEDD and FLOYD,
Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Chief Judge Traxler and Judge Shedd joined.

## COUNSEL

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Melissa Elaine O'Boyle, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON**

**BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Walter B. Dalton, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Neil H. Mac-Bride, United States Attorney, Alexandria, Virginia, Elizabeth M. Yusi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

## OPINION

FLOYD, Circuit Judge:

In this appeal, we consider whether the district court properly applied two five-level enhancements to Alan Paul Strieper's sentence for attempted enticement, receipt of child pornography, and possession of child pornography. We also consider whether Strieper's sentence is substantively reasonable. For the reasons stated below, we affirm.

I.

We briefly review the undisputed facts and procedural history. In early November 2009, Strieper, an information systems technician with the United States Navy, joined an online forum where individuals chat and share stories regarding their interest in young boys. Between late November 2009 and early February 2010, Strieper and "Stu," a confidential source for the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), engaged in detailed online chats about Strieper's large child pornography collection and his desire to kidnap, molest, and murder a young child. Strieper began to develop a plan wherein Stu would travel from St. Louis, Missouri to Norfolk, Virginia to meet Strieper and together they would kidnap, rape, and possibly murder a child. In early January 2010, Strieper told Stu

when he would be available to execute the plan, what objects he would bring with him, and what he would do with the body of the dead child. On January 15, 2010, Strieper and Stu arranged for Stu to fly from St. Louis to Norfolk to carry out the plan. They did not select or identify a specific victim prior to the trip, however. Rather, they agreed to abduct a four- or five-year-old child at random.

On February 5, 2010, ICE agents arrested Strieper at Norfolk International Airport when he approached an undercover agent who he believed was Stu. A search of Strieper's vehicle uncovered items that he told Stu he would purchase to accomplish the plan: duct tape, a prepaid Tracphone, rubber gloves, cleaning supplies, and bottles of pills. A search of Strieper's home uncovered electronic media devices on which agents found numerous images and videos of child pornography, and a forensic analysis of these devices revealed that Strieper had used Limewire, a peer-to-peer (P2P) file-sharing program, to download and share the child pornography. Strieper's collection of child pornography included images of prepubescent children and images that featured sadomasochistic conduct.

On April 21, 2010, a federal grand jury indicted Strieper on one count of attempted enticement, in violation of 18 U.S.C. § 2422(a); two counts of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5). Strieper pled guilty without a plea agreement to all counts.

On September 7, 2010, the district court sentenced Strieper to 420 months' imprisonment. The court applied two five-level enhancements to calculate Strieper's offense level of 42. It applied the first enhancement for engaging in a pattern of sexual abuse or exploitation of a minor and the second for distribution of child pornography for receipt of a thing of value. At sentencing, Strieper objected to the first enhancement, but

not to the second. Strieper's sentence was within the applicable Guidelines range.

## II.

On appeal, Strieper contends (1) that the district court erred in applying each enhancement and (2) that his sentence is substantively unreasonable.

We review criminal sentences only "to determin[e] whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). First, we "ensure that the district court committed no significant procedural error, such as . . . improperly calculating . . . the Guidelines range." *Id.* at 51. In this regard, we review the court's factual findings for clear error, its legal conclusions de novo, *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009), and unpreserved arguments for plain error, *United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010). If no procedural error exists, we review "the substantive reasonableness of the sentence imposed" for abuse of discretion. *Gall*, 552 U.S. at 51.

## A.

The Sentencing Guidelines allow for a five-level enhancement to a defendant's offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5).

A "pattern of activity" is "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant." *Id.* § 2G2.2 cmt. n.1. "Sexual abuse or exploitation" includes, inter alia, sexual abuse, in violation of 18 U.S.C. §§ 2241–43; enticement, in violation of 18 U.S.C. § 2422; and traveling with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423.[1] *Id.* Of

---

[1]Violation of a state law equivalent to these federal statutes is also "sexual abuse or exploitation." U.S.S.G. § 2G2.2 cmt. n.1.

course, an attempt or conspiracy to violate any of these statutes equally qualifies as "sexual abuse or exploitation." *Id.* Furthermore, for purposes of this provision, a "minor" is

> (A) an individual who had not attained the age of 18 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

*Id.*

The district court applied a five-level pattern of activity enhancement to Strieper's sentence, concluding that he engaged in three instances of sexual abuse or exploitation of a minor: (1) arranging a meeting with a minor in Chesapeake, Virginia, (2) communicating online with a minor in Virginia Beach, Virginia, and (3) attempting to entice Stu to travel to engage in illicit sexual activity. Strieper contends that the district court erred, however, because neither his communication with the minor in Virginia Beach, nor his interaction with Stu qualifies as an instance of "sexual abuse or exploitation of a minor."[2] We disagree and address Strieper's communication with Stu below. Because we conclude that Strieper's communication with Stu qualifies as an instance of "sexual abuse or exploitation of a minor," we do not address his communication with the minor in Virginia Beach.

Strieper argues that his attempt to entice Stu does not qualify as "sexual abuse or exploitation of a minor" because the

---

[2]Strieper concedes that arranging the meeting with a minor in Chesapeake, Virginia qualifies as one instance.

definition of "minor" requires a specific, identified victim.[3] In short, Strieper argues that even though the definition of "minor" allows for a fictitious person, because a minor must be an "individual," it requires a particular individual, not an unidentified, generalized individual, as was the subject of Strieper and Stu's conversations here.[4]

We interpret the Sentencing Guidelines according to the ordinary rules of statutory construction. *United States v. Hargrove*, 478 F.3d 195, 205 (4th Cir. 2007). Thus, we "give a guideline its plain meaning, as determined by examination of its 'language, structure, and purpose.'" *Id.* (quoting *United States v. Horton*, 321 F.3d 476, 479 (4th Cir. 2003)).

"Individual" means a single person or, alternatively, a par-

---

[3]Notably, Strieper does not make any arguments regarding whether enticement of a third-party adult to travel in interstate commerce to engage in illegal sexual conduct with a minor constitutes sexual abuse or exploitation of that minor. However, among the conduct that constitutes sexual abuse or exploitation is that criminalized under 18 U.S.C. § 2423(b), which prohibits traveling in interstate commerce with an intent to engage in illicit sexual conduct, including illicit sexual conduct with a minor. Because an instance of sexual abuse or exploitation of a minor may be found where a defendant travels in interstate commerce to engage in illicit sexual conduct where this conduct involves a minor, it follows that enticing a third-party adult to do so may also constitute sexual abuse or exploitation of a minor. In the end, the effect on the minor certainly is the same.

[4]At oral argument, Strieper also suggested that there must be an identifiable victim to constitute an attempt. This argument did not appear in Strieper's brief, and as such, it is waived. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999). In addition, this position lacks merit, as it is well established that attempt requires only the requisite intent to commit the crime and a substantial step toward its commission. *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003). So long as these elements are satisfied, no identified victim is necessary. Indeed, as we noted at oral argument, if two individuals intending to rob a bank start out with all accoutrements necessary for a robbery and agree simply to rob the first bank they happen upon rather than identifying a specific bank ahead of time, we could still conclude that the individuals had attempted to commit robbery.

ticular person. *See e.g.*, *Merriam-Webster Dictionary* 382 (2011); *American Heritage Dictionary* 354 (5th ed. 2011). In light of these alternatives, therefore, we consider which definition comports with the purpose of the "pattern of activity" enhancement.

Section 2G2.2 "as a whole is concerned with acts involving sexually exploitive material," *United States v. Ketcham*, 80 F.3d 789, 794–95 (3d Cir. 1996), but the subsections of § 2G2.2 indicate that the severity of an enhancement is related to a defendant's level of direct involvement in abusing or exploiting a minor. *See id.* Subsections 2G2.2(b)(1) through (b)(4), for example, "concern[ ] [a defendant's dealings with] *material* involving the sexual exploitation of minors" and delineate lower enhancements because the defendant's involvement in the sexual exploitation is indirect. *Id.* at 794. In contrast, § 2G2.2(b)(5) "singles out for more severe punishment those defendants who are more dangerous because they have been involved first hand in the exploitation of children." *Id.* at 795. Moreover, the application of the § 2G2.2(b)(5) enhancement to fictitious children indicates a focus on the danger a defendant would pose if given the opportunity to carry out his plans, rather than on whether a defendant actually has exposed a child to direct harm. Given the enhancement's goal, then, of identifying those intending to be involved in the first-hand sexual abuse or exploitation of a minor, whether real or fictitious, it follows that whether a defendant has identified a specific victim ahead of the crime is not dispositive.[5]

---

[5]Strieper cites numerous cases in which courts applied the pattern of activity enhancement when the underlying conduct involved an identified individual. These cases are of limited value, however. Typically, one would expect that when a victim is unidentified, the government would not be able to establish that the defendant actually engaged in or attempted to engage in an offense involving a minor because it could not show that the defendant had formed the requisite intent or had taken a substantial step towards committing the crime. *See, e.g.*, *United States v. Chapman*,

Here, the district court determined that absent his arrest, Strieper would have carried out his plan to abduct and assault a child.[6] Accordingly, his failure to identify a specific child at the outset does not diminish his danger to children or his first-hand involvement in the exploitation of a minor. Therefore, we hold that for purposes of § 2G2.2, the term "minor" may include an unidentified individual, provided that evidence shows the individual would be under eighteen years of age.

B.

The Sentencing Guidelines also allow a five-level enhancement where the defendant has distributed child pornography "for the receipt, or expectation of receipt, of a thing of value." U.S.S.G. § 2G2.2(b)(3)(B). "'Thing of value' means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material . . . ." *Id.* cmt. n.1.

The district court applied the enhancement because Strieper obtained and distributed child pornography through a P2P network. Strieper contends that the district court erred, however, and that, instead, it should have applied a two-level enhancement for distribution of child pornography. Again, we disagree.

---

60 F.3d 894 (1st Cir. 1995), *superseded by statute on other grounds*, U.S.S.G. § 2G2.2 cmt. n.1 (1996). As such, cases involving unspecified minors understandably are rare and the fact that most cases involve identified minors does not compel us to hold that the term "minor" includes only identified individuals.

[6]Although Strieper contends that he would not have carried out his plan, the district court's finding in this regard was not clearly erroneous given that, at the time of his arrest, Strieper had already gathered the materials he needed to complete the plan and driven to the airport to pick up Stu.

Strieper did not object to this enhancement at sentencing. Thus, we review the district court's decision for plain error. *Lynn*, 592 F.3d at 577. "To establish plain error, the appealing party must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights." *Id.* Even if an appellant satisfies these elements, we "may exercise [our] discretion to correct the error only if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009)). Furthermore, where we have yet to speak directly on a legal issue and other circuits are split, a district court does not commit plain error by following the reasoning of another circuit. *United States v. Rouse*, 362 F.3d 256, 263–64 (4th Cir. 2004).

Although we have previously upheld the application of a two-level distribution enhancement when a defendant shared files through a P2P network, *Layton*, 564 F.3d at 335, we have yet to address whether a district court may appropriately apply a five-level enhancement for sharing files through such a network. Moreover, our sister circuits have reached different conclusions on the matter. *Compare United States v. Griffin*, 482 F.3d 1008, 1013 (8th Cir. 2007) (holding that a five-level enhancement is appropriate when a defendant downloads and shares files through a P2P network because "these networks exist—as the name 'file-sharing' suggests—for users to share, swap, barter, or trade files between one another"), *with United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007) (noting that a five-level enhancement does not always apply to defendants who download and share files through a P2P network because a defendant who shares files on such a network does not always do so "with the expectation of receiving other users' files in return").

Because the district court followed the reasoning of the Eighth Circuit regarding an issue on which we have not ruled directly, it did not commit plain error, and we decline to reverse its application of the enhancement.

C.

Finally, Strieper contests the reasonableness of his sentence. We evaluate the substantive reasonableness of a sentence "in light of all the relevant facts." *Layton*, 564 F.3d at 337 (quoting *United States v. Curry*, 523 F.3d 436, 439 (4th Cir. 2008)) (internal quotation marks omitted). Moreover, "a sentence imposed 'within the properly calculated Guidelines range . . . is presumptively reasonable.'" *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006) (omission in original) (quoting *United States v. Newsom*, 428 F.3d 685, 687 (7th Cir. 2005)).

Strieper first contends that a presumption of reasonableness should not apply to sentences for child pornography offenses because the relevant Guideline was developed pursuant to congressional dictates rather than the Sentencing Commission's expertise. We have previously rejected this view, however, and instructed courts "to give respectful attention to Congress'[s] view that [child pornography crimes] are serious offenses deserving serious sanctions." *United States v. Morace*, 594 F.3d 340, 347 (4th Cir. 2010) (second alteration in original) (quoting *United States v. Hecht*, 470 F.3d 177, 182 (4th Cir. 2006)) (internal quotation marks omitted).

Here, the district court considered and properly weighed all relevant factors in determining Strieper's sentence. It noted potential mitigating factors, such as the sexual abuse Strieper experienced as a child, but ultimately determined a lengthy sentence was necessary because of the seriousness of Strieper's offenses. Strieper contends that his child pornography sentence is unreasonable because it exceeds the Guidelines advisory range for enticement and the conduct underlying his enticement offense was of greater concern to the district court. The sentence, however, was within the Guidelines range for child pornography offenses. Moreover, his possession of particularly violent pornographic materials of very young children combined with the direct threat he

posed—as made apparent by the enticement conduct—justifies the district court's within-range sentence. Thus, we hold that Strieper's sentence is not substantively unreasonable.

### III.

For the foregoing reasons, we affirm the sentence imposed by the district court.

*AFFIRMED*