**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4924**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

DAREN KAREEM GADSDEN, a/k/a D,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.  (1:11-cr-00302-WDQ-3)

———————

Argued: January 29, 2015          Decided: April 1, 2015

———————

Before DUNCAN, WYNN, and THACKER, Circuit Judges.

———————

Affirmed in part and remanded with instructions in part by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Wynn and Judge Thacker joined.

———————

**ARGUED:**  Sarah F. Lacey, LEVIN & CURLETT LLC, Baltimore, Maryland, for Appellant.  Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:** Steven H. Levin, LEVIN & CURLETT LLC, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

A jury convicted Daren Kareem Gadsden of one count of conspiracy to commit bank fraud, eight counts of bank fraud, two counts of aggravated identity theft, and two counts of evidence tampering. The district court sentenced Gadsden to 286 months' imprisonment. Gadsden appeals the district court's denial of his motion for judgment of acquittal, his sentence, and the district court's restitution order. For the following reasons, we affirm Gadsden's convictions and sentence, but remand with instructions to adjust his restitution amount as agreed to by both parties.

## I.

Gadsden was a landlord in the Housing Authority of Baltimore City's ("HABC") Section 8 program. HABC disbursed rental payments to Section 8 landlords from the bank account it held with Bank of America. In late 2009 and early 2010, HABC lost several thousand dollars from its Bank of America account in unauthorized Automated Clearing House ("ACH") transfers to a PNC Bank account held by Daren Gadsden, LLC.[1] When HABC

---

[1] ACH is "a payment system that . . . allows financial institutions to send and receive funds" through electronic transfers. J.A. 77.

confronted him about the losses, Gadsden denied wrongdoing but agreed to pay the agency $1,400.

In the spring of 2010, Gadsden recruited Tyeast Brown to participate in a scheme to steal money from HABC using unauthorized ACH transfers. Brown in turn recruited William Darden and Keith Daughtry. Darden, posing as Daughtry and using a forged driver's license with Daughtry's name but Darden's photograph, opened a PNC Bank account for Keith Daughtry Contracting, LLC ("Daughtry LLC"). Gadsden then transferred funds through the ACH from HABC's Bank of America account to the Daughtry LLC account. Gadsden also used a stolen identity to open a Bank of America account under the name James Fisher Consulting, LLC ("Fisher LLC"). Gadsden began transferring funds to that account through the ACH after submitting a fraudulent consulting agreement between Fisher LLC and HABC in which he forged the signature of HABC's CFO.

Gadsden, Brown, Darden, and Daughtry gained access to the stolen funds through the following three methods: (1) they transferred funds through the ACH from the Daughtry LLC account at PNC Bank into 54 NetSpend debit card accounts in the names of other individuals, some of whose identities Gadsden had stolen; (2) they made in-person cash withdrawals from the Daughtry LLC account; and (3) they opened accounts, such as the Fisher LLC account, at banks other than PNC--sometimes by using stolen

3

identities--and effected ACH transfers to those accounts. All told, Gadsden, Brown, Darden, and Daughtry obtained almost $1.4 million from HABC's Bank of America account through unauthorized ACH transfers. PNC Bank ultimately covered that loss by returning the full amount to Bank of America, and it reduced its net loss to $1.1 million by recovering some money from other banks that received ACH transfers as part of the scheme.

In April 2011, an FBI agent told Gadsden he wanted to speak to him about a bank fraud investigation. Two days after they spoke, an email account directly associated with the fraud was deleted; five days later, another email account associated with the fraud was similarly deleted. Testimony at trial established that the IP address used to login to the two deleted accounts matched the IP address used to login to Gadsden's personal email account, suggesting that Gadsden operated all three accounts.

A grand jury indicted Gadsden in May 2012 on thirteen counts related to the fraud. At trial in October 2012, the jury could not reach a unanimous verdict, resulting in a mistrial. After a second trial in July 2013, the jury convicted Gadsden on all counts.

Gadsden moved under Federal Rule of Criminal Procedure 29 ("Rule 29") for judgment of acquittal. He argued that the government failed to produce sufficient evidence to support any of the convictions under the heightened burden of proof it

4

accepted. The district court denied the motion on the ground that the evidence was in fact sufficient. It sentenced Gadsden to 286 months' imprisonment and ordered restitution in the amount of $1,399,700. Gadsden appealed.

## II.

A Rule 29 motion challenges the sufficiency of the evidence to support the conviction. See Fed. R. Crim. P. 29(a), (c). We review the denial of a Rule 29 motion de novo, "constru[ing] the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it." United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011). A Rule 29 movant bears a heavy burden. We "will sustain the jury's verdict if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Id. (emphasis in original).

## III.

Gadsden argues on appeal that the district court erred by denying his motion for judgment of acquittal, imposing an unreasonable sentence, and setting his restitution amount at $1,399,700. We address each issue in turn.

A.

Gadsden first argues that he was entitled to judgment of acquittal because the evidence was insufficient to support any of his convictions. We disagree. A rational jury could have found the elements of the crimes charged beyond a reasonable doubt.

1.

Count One, which charged Gadsden with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, need not detain us long. Gadsden challenges his conspiracy conviction solely on the ground that the government failed to produce sufficient evidence to support the substantive bank fraud convictions. See Appellant's Br. at 15–22; J.A. 1164–69. Consequently, he has waived any other potential challenges to his conviction under Count One because he raised no other arguments in his brief. See United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."). Because Gadsden tethers his only argument under Count One to his sufficiency argument under Counts Two through Nine, if there was sufficient evidence for the substantive bank fraud convictions, his conspiracy argument fails. As explained below, we affirm the substantive bank fraud convictions on the ground that they

6

were supported by sufficient evidence. Therefore, we also affirm the conviction for Count One.

2.

Counts Two through Nine charged Gadsden with bank fraud in violation of 18 U.S.C. § 1344. Section 1344 reads as follows:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. A person commits bank fraud by violating either subsection. United States v. Brandon, 298 F.3d 307, 311 (4th Cir. 2002).

The government presented a theory of liability under § 1344(2), alleging that Gadsden executed a single, integrated scheme to obtain funds that were first in the custody of Bank of America and then in the custody of PNC Bank. The government conceded at trial, and continues to concede on appeal, that it therefore had to prove that Gadsden violated § 1344 as to both banks.[2] The district court instructed the jury in accordance

---

[2] We express no opinion as to whether this concession was (continued)

7

with that concession.  See J.A. 1123.  The district court also instructed the jury, without objection by either party, that the government had to prove that Gadsden "placed the banks at a risk of loss and that the banks did not knowingly accept such a risk."[3]  J.A. 1125.

---

necessary or appropriate.  Regardless of whether the government was required to prove a violation as to both banks, the evidence was sufficient to support the § 1344 convictions.

[3] While this case was on direct appeal, the Supreme Court issued Loughrin v. United States, in which it rejected the argument that risk of loss is an element of bank fraud under § 1344(2).  See 134 S. Ct. 2384, 2395 n.9 (2014).  Even if Loughrin were to apply retroactively and render the district court's "risk of loss" instruction erroneous, we would not correct that error because it would not affect the outcome of this case: the jury convicted Gadsden despite the favorable instruction, and, as we discuss below, the evidence supports the convictions.  See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

While Gadsden argues that we should not retroactively apply Loughrin, Appellant's Br. at 22–23, 30, he also maintains that if Loughrin were to apply, the government must have had to prove that Gadsden obtained funds "by means of false statements that were the mechanism naturally inducing each bank to part with HABC's funds."  Appellant's Br. at 26.  Assuming Gadsden's interpretation of Loughrin is correct and that the government failed to meet that standard, we still would not reverse under Loughrin because Gadsden requested an instruction at trial, which the district court gave, that the false statements "must relate to a material fact or matter" and must have been made "in furtherance of the alleged scheme to defraud," regardless of whether they naturally induced the banks to part with funds.  Supp. J.A. 16; J.A. 1124–25.  Even if that instruction constituted plain error, we would not correct that error because Gadsden invited it, and "[i]n the context of plain error review, an error that was invited by the appellant 'cannot be viewed as (continued)

8

Gadsden argues on appeal that the evidence at trial was insufficient to support the finding that Bank of America suffered a risk of loss. Because the jury could have reasonably inferred that Bank of America suffered a risk of loss to HABC, an actual loss to PNC, or both, we hold that the evidence was sufficient to support Gadsden's convictions for bank fraud.

As to risk of loss, PNC investigator Michael Hersh testified at trial that Daughtry LLC "was going to receive [approximately $1.3 million] from Bank of America" in ACH transfers from the HABC account. J.A. 79. Although PNC returned the full amount to Bank of America, the jury could have reasonably inferred from Hersh's testimony that Bank of America suffered a risk of loss in that it would have been liable to HABC for the fraudulently transferred funds but for PNC's decision to return all of the funds.

Indeed, the jury could also have reasonably inferred that Bank of America suffered an <u>actual</u> loss based on Hersh's testimony that PNC Bank "recover[ed] some money from the branches or banks that the funds were sent to," bringing its loss down to $1.1 million. J.A. 188. Although Hersh did not

_____

one that affected the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States v. Lespier</u>, 725 F.3d 437, 450 (4th Cir. 2013) (quoting <u>United States v. Gomez</u>, 705 F.3d 68, 76 (2d Cir. 2013)).

name any specific bank, the jury received evidence that accounts at Bank of America were the second most-common recipients of funds transfers from the Daughtry LLC account, with over $250,000 going into the Fisher LLC account alone. See J.A. 1456-61. This evidence supports the conclusion that PNC recovered some of the money from Bank of America, indicating that Bank of America suffered an actual loss.

Based on the evidence described above, a rational jury could have concluded beyond a reasonable doubt that Bank of America suffered a risk of loss or actual loss, either of which was sufficient to support the convictions. Accordingly, we affirm the convictions for Counts Two through Nine.

3.

Counts Ten and Eleven charged Gadsden with aggravated identity theft in violation of 18 U.S.C. § 1028A. A person who, "during and in relation to any [predicate] felony violation . . . , knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," commits aggravated identity theft. 18 U.S.C. § 1028A(a)(1). Bank fraud is a predicate felony violation. Id. § 1028A(c)(5).

Gadsden does not challenge that he used stolen identities, but rather argues on appeal that his aggravated identity theft conviction requires not just the commission, but also

10

conviction, of bank fraud. Thus, he submits that, because there was insufficient evidence for the bank fraud convictions, there cannot have been sufficient evidence for the aggravated identity theft convictions. See Appellant's Br. at 21–22; J.A. 1164 n.3. Therefore, as with the conspiracy count, if there was sufficient evidence for the bank fraud convictions, his argument fails.

Whether conviction of the predicate offense is required to support an aggravated identity theft conviction is a question of first impression in this circuit. But the jury did convict Gadsden of bank fraud, and we affirm those convictions, so we need not answer that question here. Because the bank fraud convictions were supported by sufficient evidence, and because Gadsden does not otherwise challenge his identity theft convictions, we also affirm the convictions for Counts Ten and Eleven.

4.

Counts Twelve and Thirteen charged Gadsden with evidence tampering in violation of 18 U.S.C. § 1512(c)(1) based on the deletion of two email accounts directly associated with the fraud. Under that subsection, a person commits tampering if he "corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." § 1512(c)(1). Gadsden makes

11

three arguments regarding the sufficiency of the evidence to support these convictions. First, he argues that the government failed to provide sufficient evidence to prove that it was Gadsden, as opposed to another co-conspirator, who deleted the accounts. See Appellant's Br. at 36–37; J.A. 1170–71. Second, he contends that he did not act "with the intent to impair the object's integrity or availability for use in an official proceeding," 18 U.S.C. § 1512(c)(1), because deleting an email account does not obstruct or impair an investigation, and because he had legitimate reasons for the deletion, see Appellant's Br. at 33–35; J.A. 1171–73. And third, he argues that the government's evidence was "entirely circumstantial." J.A. 1170.[4]

As we noted above, the evidence at trial showed that the email accounts were deleted within days of the FBI agent's conversation with Gadsden about a bank fraud investigation, and that the IP address used to login to the two deleted accounts matched the IP address used to login to Gadsden's personal email

---

[4] Gadsden also argues--for the first time on appeal--that an email account, as opposed to an email message, is not a "record, document, or other object" under the statute. Appellant's Br. at 32. Because Gadsden failed to raise that legal argument in addition to the factual arguments in his Rule 29 motion, thereby "precluding the district court from having the first opportunity to opine on it," the argument is waived. United States v. Chong Lam, 677 F.3d 190, 200 (4th Cir. 2012).

12

account. Taking that evidence together, a rational factfinder could have concluded beyond a reasonable doubt that Gadsden deleted the email accounts with the intent to impair the investigation.[5] And that the evidence may have been circumstantial does not support his claim. "[C]ircumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989). We thus affirm the convictions for Counts Twelve and Thirteen.

B.

We turn now to Gadsden's challenge to the reasonableness of his sentence. The district court imposed on Gadsden the minimum within-Guidelines sentence of 286 months' imprisonment: individual, concurrent sentences of 262 months for Counts One through Nine; concurrent 240-month sentences for Counts Twelve and Thirteen, to run concurrently with the sentences for Counts One through Nine; and concurrent 24-month sentences for Counts

_____

[5] Because § 1512(c)(1) criminalizes attempts to tamper with evidence with the intent to impair an investigation, whether the deletion succeeded at impairing the investigation is immaterial.

13

Ten and Eleven, to run consecutively with the other sentences.[6]

J.A. 1341.

In calculating the Guidelines range, the district court applied several enhancements.  Gadsden objected to the following four, each of which increased his offense level by two: (1) making a misrepresentation that the defendant was acting on behalf of a government agency; (2) using sophisticated means in the offense; (3) deriving more than $1 million in gross receipts from a financial institution as a result of the offense; and (4) obstructing justice.[7]  J.A. 1300–01.  He now argues that the sentence was procedurally unreasonable because the district court misapplied those enhancements.

When a defendant challenges the reasonableness of a criminal sentence, we review the sentencing determination for an abuse of discretion.  United States v. McManus, 734 F.3d 315, 317 (4th Cir. 2013).  "We review the district court's factual findings for clear error and its legal conclusions de novo."

---

[6] A sentence for conviction under § 1028A (Counts Ten and Eleven) must be consecutive with sentences for other crimes, though sentences for multiple convictions of § 1028A may run concurrently with each other at the court's discretion.  18 U.S.C. § 1028A(b)(2), (4).

[7] The obstruction-of-justice enhancement does not apply to a conviction of evidence tampering, so as to prevent double counting.  U.S.S.G. § 3C1.1 cmt. n.7.  But the enhancement does apply where, as here, the obstruction offense is grouped with an underlying offense, such as bank fraud.  See § 3C1.1 cmt. n.8.

*Id.* "The burden is on the Government to prove the facts needed to support a sentencing enhancement by a preponderance of the evidence." *Id.* at 319.

We have considered Gadsden's arguments with respect to the sentencing enhancements and find no clear error as to the first three enhancements, which Gadsden challenges on the facts, and no error as to the obstruction enhancement, *see* *supra* n.7. Accordingly, we conclude that the district court did not abuse its discretion. The evidence showed that (1) Gadsden made a misrepresentation that he was acting on behalf of a government agency by forging the signature of HABC's CFO; (2) Gadsden used sophisticated means in the fraud, as it included, for example, fabricated documents, multiple stolen identities, and the transfer of funds into numerous different accounts at several different banks; (3) the scheme derived more than $1 million from a bank; and (4) Gadsden attempted to obstruct justice in connection with the bank fraud by deleting the email accounts.[8] We therefore affirm Gadsden's sentence.

### C.

Finally, Gadsden challenges the restitution amount of $1,399,700. Appellant's Br. at 46 n.8. Because PNC Bank

---

[8] The obstruction-of-justice enhancement, like the evidence-tampering statute, applies to attempts as well as to completed acts. U.S.S.G. § 3C1.1.

15

mitigated its loss to $1.1 million, the government concedes that the restitution amount should be $1.1 million, and asks this court to remand the case to the district court with instructions to adjust its judgment accordingly. Appellee's Br. at 58 n.21. We do so here.

IV.

For the foregoing reasons, we affirm the judgment of the district court as to Gadsden's convictions and sentence, and remand with instructions to alter the restitution amount to $1,100,000.00.

AFFIRMED IN PART AND
REMANDED WITH INSTRUCTIONS IN PART