Affirmed by published opinion. Judge MOTZ wrote the opinion, in which Judge NIEMEYER joined. Judge DIAZ wrote a separate opinion dissenting in part.
DIANA GRIBBON MOTZ, Circuit Judge:
Steven Robinson challenges his 140-month sentence for cocaine distribution, contending that the district court erred in assigning his drug quantity and in calculating his criminal history. For the reasons that follow, we affirm.
I.
A.
In 2010, police officers in Wilson, North Carolina, videotaped Robinson and two others making six crack-cocaine sales to a police informant. The Government indicted Robinson on one count of conspiring to distribute crack cocaine from 2002 to 2011, one count of aiding and abetting the distribution of crack cocaine, and six counts of distribution of crack cocaine. Robinson pled guilty to three of these counts in February 2012, but sought to proceed to trial on the remaining five counts. His two co-conspirators pled guilty the week before Robinson’s scheduled trial. In light of these guilty pleas, Robinson himself pled guilty to the remaining five counts on April 30, 2012, the day on which his trial had been scheduled.
*296 B.
A presentenee investigation report (PSR) drafted by a probation officer calculated Robinson’s base offense level in light of the quantity of crack cocaine attributable to him. Although the counts to which Robinson pled guilty specify only that the crime involved “50 grams or more” of crack cocaine, the Sentencing Guidelines require judges to consider all drug sales made by the defendant during the conspiracy — including drug sales not covered by the counts of conviction. U.S.S.G. § 2D1.1 cmt.5.
In Robinson’s case, the probation officer concluded that, between 2002 and 2011, Robinson sold far more crack cocaine than was implicated by the six sales the police captured on tape. In arriving at this conclusion, the probation officer relied on statements made to the police by Melvin Battle, who claimed to have purchased drugs from Robinson regularly from 2000 through 2008. Taking the low end of Battle’s estimates, the probation officer estimated that Robinson sold Battle 1.43 kilograms of crack cocaine. This estimate, combined with the drug quantity covered by the counts of conviction, translated to a drug quantity calculation of 1.47 kilograms of crack cocaine, which produced a base offense level of 34. From this base offense level, the probation officer recommended a 3-level reduction for acceptance of responsibility, resulting in a recommended offense level of 31.
The PSR also contained a calculation of Robinson’s criminal history category. The probation officer assigned Robinson one criminal history point based on a 2003 conviction for marijuana possession, and another point based on a 2009 conviction for resisting arrest and carrying a concealed weapon. The probation officer added two more points under Section 4Al.l(d) of the Sentencing Guidelines, which provides for an enhancement if the defendant committed the crime of conviction while on probation. The probation officer reasoned that Robinson had been given a one-day sentence of probation because of his 2003 marijuana conviction, and that this term coincided with the ongoing drug conspiracy. These four criminal history points produced a criminal history category of III.
Based on a criminal history category of III and an offense level of 31, the recommended Guidelines range in the PSR totaled 135-168 months imprisonment.
C.
At sentencing, Robinson objected both to the calculation of drug quantity and the calculation of criminal history.
i.
Robinson’s challenge to his drug quantity rested on the PSR’s reliance on the statement provided by Melvin Battle. Given the opportunity to address the court directly, Robinson pointed out that, before attributing 1.43 kilograms of crack to Robinson, Battle had in an earlier interview stated that Robinson sold him 6 kilograms of the drug. Robinson also argued that Battle’s claim to have bought PCP cigarettes from Robinson in North Carolina from 2005 to 2008 was false because Robinson was enrolled in culinary school in Florida during most of that period. Contending that he never sold drugs to Battle, Robinson insisted that Battle was “blatantly lying” to curry favor with prosecutors.
In response, the Government conceded that Battle revised his statement to render his second drug-quantity estimate significantly lower than his first. But the Government argued that “it is not unusual for Defendants to estimate differently” when interviewed on two separate occasions. *297 According to the Government, Battle’s second statement merely provided a more conservative and reliable estimate than the first. With respect to the PCP cigarettes Battle claimed to have bought when Robinson was in Florida, the Government emphasized that these sales did not figure into the PSR drug-quantity assignment.
The Government further defended the drug-quantity calculation by explaining that, notwithstanding the asserted deficiencies in Battle’s statement, three other witnesses were prepared to state that Robinson sold them drugs during the conspiracy timeframe. Although these statements did not “make their way” to the probation office, the Government maintained that these accounts would put Robinson “in at least the position he’s in with Mr. Battle’s statement, if not in a worse position.”
Upon consideration of the parties’ arguments, the district court presented Robinson with a choice:
We’ll do it one of two ways. We’re going to go forward today with what’s here and now, and I’ll make the decisions that I need to make by a preponderance of the evidence. Or I’ll unwind the whole thing. I’ll start the PSR process all over. If there are statements that didn’t, for whatever reason, make it to the Probation Office, [I’ll] start again. And, whatever happens, happens. And then, you’ll have a chance to object.... That’s the only way I see — those are the only two choices.
Robinson responded by reiterating that Battle’s statement was not credible. But, after the court again asked him whether he would prefer to proceed on the basis of Battle’s statement or delay sentencing for three months to allow the parties ample time to obtain more information, Robinson responded that “I would rather go ahead and do it now, Your Honor.”
The Government further explained the basis of the drug quantity calculation set forth in the PSR and why this calculation would have been higher if the PSR had included statements of other witnesses. Robinson then addressed the court, contending that he “wasn’t an everyday drug dealer” and that any witnesses saying to the contrary were lying. After the court reviewed the counts to which Robinson pled guilty, it concluded that, with respect to the relevant conduct informing his drug quantity calculation, Robinson “really ha[d] gotten a break [because of] the way the Probation Office calculated the amount of crack cocaine.” The court stated that it “had heard enough to conclude that the calculations in the [PSR were] credible and reliable,” and that they could be used in calculating Robinson’s offense level, but it again reiterated that it was willing to “open this all back up” if Robinson were so inclined. Robinson did not take the court up on its offer.
ii.
Robinson also objected to the PSR’s assignment of two criminal history points on the basis of his sentence of one day probation for the 2003 marijuana conviction. He argued that he had spent the entire day of probation en route from the Maryland courthouse, and so could not have sold drugs on that day. The court rejected this argument and imposed a two-point adjustment, concluding that the Sentencing Guidelines required this result. This adjustment increased Robinson’s guidelines range from 121-151 months to 135-168 months. The court sentenced Robinson to 140 months imprisonment — a sentence the court noted was “well within” both ranges.
Robinson appeals, asserting that the district court procedurally erred in calculat *298 ing his drag quantity and criminal history.[1]
II.
With respect to drag quantity, Robinson contends that the district court committed plain error by relying on Battle’s statement in the PSR. Robinson, however, has waived this contention. When he made the conscious choice at sentencing to proceed on the basis of the information contained in the PSR, including Battle’s statement, Robinson waived his right to appeal the district court’s reliance on that information.
A “waiver is the intentional relinquishment or abandonment of a known right.” Wood v. Milyard, — U.S. —, 132 S.Ct. 1826, 1835, 182 L.Ed.2d 733 (2012) (quotation marks omitted). Waiver is to be distinguished from “forfeiture,” which is “the failure to make the timely assertion of a right.” Kontrick v. Ryan, 540 U.S. 443, 458, n. 13, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Courts may review a forfeited claim for plain error. United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[2] But when a claim is waived, it is not reviewable on appeal, even for plain error. Id. Rather, a valid waiver means that there was “no error at all.” United States v. Keeter, 130 F.3d 297, 300 (7th Cir.1997). The case at hand is one of waiver, not forfeiture. “A party who identifies an issue, and then explicitly withdraws it, has waived the issue.” United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir.2002).
Here, Robinson raised an objection to his drug-quantity calculation by challenging the credibility and reliability of the testimony on which the PSR relied. The Government countered this objection by stating that other witnesses were available to corroborate (or augment) the drag-quantity calculation. The district court could have unilaterally chosen to grant a continuance. See United States v. Johnson, 732 F.2d 379, 381 (4th Cir.1984). But, perhaps because doing so might have led to Robinson receiving a higher sentence, the court instead provided Robinson with a choice: (1) postponement of sentencing to allow the parties to produce new evidence as to the proper drag quantity, or (2) proceeding to sentencing based on the evidence before the court.
When presented with this choice, Robinson unequivocally stated that he “would rather go ahead and do it now.” Furthermore, he adhered to this position when the district court gave him an opportunity to change his mind. Thus, Robinson consciously abandoned his objection to the drag quantity calculation in the PSR and instead opted to proceed to sentencing based on the information in the PSR. This was waiver.
Whether the waiver was valid is a matter of law that we review de novo. United States v. Marin, 961 F.2d 493, 496 (4th Cir.1992). Criminal defendants may waive statutory or constitutional rights— including the right to challenge a particular ruling on appeal — if the waiver is knowing and voluntary. Id. Examination of the totality of the circumstances determines whether a waiver is knowing and *299 voluntary. United States v. Farrell, 393 F.3d 498, 500 (4th Cir.2005).
In this case, the record reveals that the defendant, Robinson, knew exactly what he was relinquishing. The district court explicitly and repeatedly explained that, by choosing to proceed with sentencing, Robinson was agreeing that his drug quantity would be calculated on the basis of the PSR, which relied on Battle’s statement. On three separate occasions, the court presented Robinson with the choice of postponing sentencing to supplement the record or proceeding with sentencing based on the information in the PSR. Robinson consistently adhered to his preference to proceed with sentencing without supplementing the record.
Nothing in the record suggests that Robinson — who had graduated from high school, attended community college, and attained an associate degree in culinary arts- — did not understand this choice. Indeed Robinson does not even contend that he did not understand this choice. Thus, his waiver was knowing and voluntary.[3]
Robinson’s decision to proceed on the basis of the existing PSR is akin to a defendant’s decision to proceed with a bench trial rather than a jury trial — quintessentially an enforceable waiver. See United States v. Boynes, 515 F.3d 284, 287 (4th Cir.2008). Having made a choice at sentencing, Robinson cannot now contend that the district court erred by honoring that choice. He has waived the argument.[4]
We note that this conclusion accords with the holdings of the Supreme Court and our sister circuits in similar circumstances. See Wood, 132 S.Ct. at 1835 (holding that the State waived a defense where, “after expressing its clear and accurate understanding” of the defense, the State “deliberately steered the district court away” from it); United States v. Guzman, 707 F.3d 938, 941, n. 2 (8th Cir.2013) (holding that defendant waived claim that Government breached plea agreement at sentencing by withdrawing pro se motion to withdraw guilty plea prior to sentencing); Rodriguez, 311 F.3d at 437 (holding that defendant “consciously *300 waived” his objection to information in the PSR by raising, and then withdrawing, the objection prior to sentencing); Keeter, 130 F.3d at 300 (holding that defendant waived an objection by rejecting the court’s offer to postpone a sentencing hearing and opting instead to proceed without delay).[5]
III.
Robinson also asserts that the district court committed two errors in calculating his criminal history.
A.
He first contends that the court erred in treating his 2003 marijuana conviction as yielding a “prior sentence” rather than as “relevant conduct” with respect to his current sentence. Whether a crime constitutes “relevant conduct” under the Guidelines is a factual question we review for clear error. United States v. Hodge, 354 F.3d 305, 313 (4th Cir.2004). If the district court’s finding “is plausible in light of the record viewed in its entirety,” we will not reverse it simply because “we would have decided the fact differently.” United States v. Stevenson, 396 F.3d 538, 542 (4th Cir.2005) (citation and quotation marks omitted).
In calculating a defendant’s offense level, a sentencing court must consider all “relevant conduct” surrounding the offense. U.S.S.G. § 1B1.3. Relevant conduct encompasses acts “that occurred during the commission of the offense of conviction [or] in preparation for that offense,” including conduct resulting in a separate criminal conviction. Id. § lB1.3(a)(l). The Guidelines include as relevant conduct “all quantities of contraband” the defendant sold during a conspiracy. Id. § lB1.3(a)(l) cmt.2 (b).
In addition to establishing the defendant’s offense level in light of all relevant conduct, a sentencing court must separately calculate the defendant’s criminal history score based in part on his “prior sentence[s].” Id. § 4A1.1. The Guidelines exclude from the definition of “prior sentences” any sentence resulting from conduct that constitutes “relevant conduct” to the current offense. Id. § 4A1.2 emt.l. Thus, if an offense qualifies as relevant conduct for offense-level purposes, it cannot also yield a prior sentence for criminal-history purposes.
Robinson pled guilty to conspiring to sell cocaine from 2002 to 2011. He had previously been found guilty of and sentenced for marijuana possession in 2003. He contends that the 2003 marijuana conviction and sentence constituted “relevant conduct” to his drug conspiracy rather than yielding a “prior sentence.” He therefore objects to the inclusion of the marijuana sentence in his criminal history score.[6]
*301 The district court did not clearly err by treating Robinson’s 2003 marijuana sentence as a prior sentence rather than relevant conduct. The 2003 sentence was for marijuana possession, while the ongoing conspiracy involved the crack cocaine distribution—suggesting two distinct crimes. Moreover, the 2003 sentence was for simple possession rather than distribution— suggesting that the marijuana was for personal use and played no role in a drug-dealing conspiracy. The fact that an unrelated drug conviction and sentence occur during the timeframe of a drug conspiracy does not automatically convert them into relevant conduct of the conspiracy. See U.S.S.G. § 4A1.2 cmt.l (“A sentence imposed after the defendant’s commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.” (emphasis added)). The district court’s finding is thus “plausible in light of the record viewed in its entirety” and is entitled to our deference. Stevenson, 396 F.3d at 542.
B.
Robinson also contends that the district court erred by adding two points to his criminal history score because he participated in the drug conspiracy while on probation. We review de novo a trial court’s legal interpretation of the Guidelines. United States v. Wessells, 936 F.2d 165, 168 (4th Cir.1991).
The Sentencing Guidelines require a two-point upward adjustment “if the defendant committed the instant offense while under any criminal justice sentence, including probation [or] parole.” U.S.S.G. § 4Al.l(d). An application note to this provision clarifies that a two-point adjustment is warranted if the defendant committed “any part of the instant offense” while on probation. Id. § 4A1.1 cmt.4. Under the plain language of this provision, an enhancement must be imposed if any part of the defendant’s crime coincides with a term of probation. See United States v. Hernandez, 541 F.3d 422, 424 (1st Cir.2008) (affirming a two-point adjustment where the defendant was sentenced to probation midway through a heroin-delivery conspiracy even though he never actually delivered heroin during the probation term). If a sentencing court concludes that a two-point adjustment is too harsh given the minor nature of the offense giving rise to probation, the proper course is to apply the enhancement and then depart downward. United States v. Kimberlin, 18 F.3d 1156, 1160-61 (4th Cir.1994).
Robinson argues that he was in transit on the day of his probation in 2003 and that he could not have sold crack cocaine on that day. But even assuming Robinson did not sell cocaine during his 24 hours of probation, the two-point adjustment was proper. Given the plain language of the Guidelines, even a short period of probation imposed during an ongoing conspiracy triggers an enhancement under § 4Al.l(d). Robinson’s “instant offense” was a drug-dealing conspiracy that spanned from 2002 to 2011. Because this timeframe included Robinson’s day of probation in 2003, the enhancement was proper. We note further that the district court, conscious of the minor nature of the marijuana offense, imposed a sentence that was “well within” both the Guidelines range including and the Guidelines range excluding this two-point adjustment.
IV.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. Robinson’s alternative argument that his military service, mental health issues, and work history render his within-Guidelines sentence substantively unreasonable is merit-less.

. Under plain error review, the challenging party must show that (1) there was an "error” (2) the error was "plain”, (3) the error "affect[s] substantial rights,” and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.” (Olano, 507 U.S. at 732, 113 S.Ct. 1770).

. The dissent asserts that "the district court did not make a finding on the reliability of Battle’s statements until after it presented Robinson with his choice,” and that Robinson "reified] on the court’s representation that it would apply the evidentiary standard” when he chose to proceed. The dissent thus concludes that Robinson waived at most "the opportunity for a 90-day delay.” This argument, which Robinson himself has never made, fails. First, it fails to consider the record in its entirety. In the very same four-sentence paragraph in which the court made its reliability finding, it again reiterated its willingness to "open this all back up.” Given Robinson's extensive argument on his own behalf (including his not infrequent interruptions of the district court), he surely would not have hesitated to withdraw his waiver if he wished to, but he did not. Moreover, the dissent's proposed holding would permit Robinson to impeach (by unsworn argument) Battle’s statement, while at the same time preventing admission of new evidence to supplement the record. In short, the dissent would permit Robinson to have his cake and eat it too. Moreover, the dissent’s approach would counsel sentencing courts to act unilaterally without offering defendants a choice, and would thus undermine the very interests the dissent aims to protect.

. The Government’s contention that Robinson "invited” error by the district court thus misses the mark. Robinson did not ”ask[]” the court to rely on Battle’s statement and then complain on appeal that this reliance was improper. See United States v. Herrera, 23 F.3d 74, 75 (4th Cir.1994). Rather, after initially objecting to the use of Battle’s statement, Robinson expressly waived any objection to it. Accordingly, rather than committing "invited error,” the district court committed “no error at all." Keeter, 130 F.3d at 300.

. Although not determinative here, given Robinson’s waiver, we note that he mistakenly asserts that United States v. Solomon, 274 F.3d 825 (4th Cir.2001) establishes that when a defendant disputes the drug quantity calculations in the PSR, the PSR provides "no evidentiary basis” for that calculation. Appellant's Br. at 13. Solomon does not so hold. Solomon merely holds that a probation officer's calculation in a PSR "standing alone” (that is, without the identification of supporting evidence of any kind) "does not constitute a finding of fact” on which a sentencing court can rely. Id. at 828, n. 3.

. Although he did not make this precise argument before the district court, Robinson did challenge his criminal history score, and thus preserved his claim. See Yee v. City of Escondido, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.”).