**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 20-4389**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JONATHAN KYLE MOREHOUSE,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.  Raymond A. Jackson, Senior District Judge.  (4:19-cr-00088-RAJ-DEM-1)

─────────────

Argued:  March 11, 2022                           Decided:  May 20, 2022

─────────────

Before NIEMEYER and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

─────────────

Vacated and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer and Senior Judge Floyd joined.

─────────────

**ARGUED:**  Donna L. Biderman, LAW OFFICE OF DONNA L. BIDERMAN, PLLC, Fairfax, Virginia, for Appellant.  Peter Gail Osyf, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.  **ON BRIEF:**  Raj Parekh, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

─────────────

WYNN, Circuit Judge:

Defendant Jonathan Kyle Morehouse appeals his 84-month sentence for distribution of child pornography.[1] He argues that the district court procedurally erred when it applied two enhancements which increased the suggested sentencing range under the Sentencing Guidelines. We agree with Morehouse as to one of those enhancements—a five-level increase under § 2G2.2(b)(3)(B) of the Guidelines. Accordingly, we reverse the district court's application of that enhancement, vacate Morehouse's sentence, and remand for resentencing.

I.

In September 2019, the United States Army Criminal Investigation Division began to investigate Morehouse, an Army servicemember, for the suspected distribution of child pornography. Shortly thereafter, the Criminal Investigation Division received a tip from the National Center for Missing and Exploited Children that, in July 2019, a user had uploaded child pornography on Snapchat, a photo-sharing and messaging application. An investigation revealed that the phone number associated with that Snapchat user belonged to Morehouse.

---

[1] "Child pornography" is the phrase used in our federal statutes, so it is the term we use herein. "Outside of the legal system," the National Center for Missing and Exploited Children refers to this type of material instead as "child sexual abuse material" or "CSAM" in order "to most accurately reflect what is depicted—the sexual abuse and exploitation of children." *Overview*, Nat'l Ctr. for Missing & Exploited Child., https://www.missingkids.org/theissues/csam (last visited Apr. 19, 2022) (saved as ECF opinion attachment).

2

The Criminal Investigation Division analyzed the images and identified at least two image files depicting child pornography. Accordingly, the Criminal Investigation Division obtained a warrant and searched Morehouse's residence and electronic devices. Fewer than ten "images depicting child pornography were observed to be on [his] cellular phone" at the time of the search, and no images or videos depicting child pornography were located on any of the other devices seized from Morehouse's residence. J.A. 49.[2]

During the search, Morehouse made several spontaneous, inculpatory statements. He told the investigators that he "kn[e]w what [the search was] about," that "everything [they were] looking for [was] on [his] phone," and that there was "nothing on [his] other devices." *Id.* He further stated that he had "a good excuse for what[] [was] on [his] phone" but that the investigators were "not going to believe [him.]" *Id.* After being advised of his *Miranda* rights, Morehouse admitted that "he had downloaded child pornographic images and videos from the website '321 Sex Chat' and various other applications" and that the previously identified Snapchat username and phone number belonged to him. J.A. 50. He further admitted that in July 2019, "he knowingly distributed material by uploading an image of child pornography." *Id.*

In October 2019, Morehouse was indicted on one count of distribution of child pornography pursuant to 18 U.S.C. § 2252A(a)(2) and (b)(1).[3] Three months later, he

---

[2] Citations to the "J.A." and "S.J.A." refer, respectively, to the Joint Appendix and Sealed Joint Appendix filed by the parties in this appeal.

[3] That same month, Morehouse received a reduction in Army rank from staff sergeant to private (the lowest enlisted grade), accompanied by an other-than-honorable discharge in lieu of a trial by court-martial, after he was convicted of violating Army

pleaded guilty to the charge without the benefit of a plea agreement but with an agreed-upon Statement of Facts. The Statement of Facts noted that Morehouse "acknowledge[d]" that the Statement "does not describe all of his conduct relating to the offenses charged in this case," and Morehouse signed a statement agreeing that the Statement of Facts was "a *partial* summary of the evidence which is true and accurate." J.A. 51 (emphasis added).

The Probation Office prepared the Presentence Investigation Report ("PSR"), which included additional facts stemming from the Probation Officer's "independent investigation." S.J.A. 189. The PSR stated that Morehouse had nine National Center for Missing and Exploited Children "CyberTips that came back to his registered IP address." *Id.*; *see also* S.J.A. 218. Case agents reviewed those nine tips and confirmed a total of six images of child pornography. Further, a messaging platform called Kik reported that Morehouse used a Kik account with a user profile picture depicting two nude or nearly nude adolescent girls. All told, the PSR attributed Morehouse with being in possession of a total of thirty-six images of child pornography.

The PSR further explained the "excuse" Morehouse had for possessing the images, which, according to the Statement of Facts, Morehouse had said agents were "not going to believe." J.A. 49. According to the PSR, during an interview with case agents, Morehouse reported that he began using the website 321 Sex Chat "to conduct sensual and sexual in nature chats with likeminded adults." S.J.A. 189. He claimed that while using the website,

---

Command Policy "by wrongfully initiating an intimate personal relationship with a trainee" and sending a picture of his genitalia to the trainee. S.J.A. 197. That disciplinary proceeding was already in motion before his indictment on the instant charge.

"he discovered images and videos of child pornography and decided to start collecting them in order to report them to law enforcement" and that "he was trying to 'build a case' against child pornography distributers." *Id.* When case agents asked if Morehouse had ever distributed child pornography material to other users, "Morehouse admitted that he had and explained that he shared an undisclosed amount of child pornography videos and images through the application 'Wickr Me.'" S.J.A. 190. Morehouse explained to the agents "that he shared the aforementioned videos and images in order to receive other child pornographic images and videos from . . . unidentified users," and he "rationalized that by doing so, he would 'catch' other child pornography distributers" through "his 'investigative' efforts." *Id.* In an interview the following day, however, Morehouse conceded that he had been viewing child pornography "for years and knew it was wrong but still kept going back to the images." J.A. 118; *see also* S.J.A. 240 (Morehouse told a psychologist during a forensic mental health evaluation in January 2020 that he viewed child pornography out of "curiosity").

The PSR identified Morehouse's baseline offense level as 22. The Probation Office applied three two-level enhancements: one each for material involving a prepubescent minor, use of a computer, and the involvement of at least ten, but fewer than 150 images. After applying an additional five-level enhancement for distribution in exchange for any valuable consideration, but not for pecuniary gain, and a three-level reduction for acceptance of responsibility, the Probation Office calculated Morehouse's total offense level as 30. Because he had zero criminal-history points, Morehouse's criminal-history

5

category was I, and his sentencing range under the Guidelines was 97 to 121 months' imprisonment.

Morehouse filed several objections to the first draft of the PSR. Relevant to this appeal, he objected to the two-level enhancement based on the number of images (the "image-quantity enhancement") and the five-level enhancement based on distribution in exchange for valuable consideration (the "exchange-for-value enhancement"). But in his position paper prior to sentencing, Morehouse withdrew his objection to the image-quantity enhancement. At sentencing, his counsel requested—and the Government and court agreed—that the PSR "simply say that he was in possession of ten or more images" instead of attributing precisely thirty-six images to him "because the number of images truly was in dispute." J.A. 119.

Morehouse continued to pursue his objection to the five-level exchange-for-value enhancement, arguing that 1) no one believed his statement that he had distributed child pornography in order to catch other perpetrators and 2) a defendant's generalized expectation of receiving something of value is insufficient to support application of the enhancement. The district court overruled the objection, finding that Morehouse had shared child pornography in order to receive additional child pornography, and that whether he had truly done so as part of a "catch a predator" operation was irrelevant. The court concluded that, regardless of his motive, Morehouse's concession that he had performed the *act* of distribution *in order to* receive more child pornography satisfied the test laid out in our opinion in *United States v. McManus*, 734 F.3d 315 (4th Cir. 2013).

6

Accordingly, the district court agreed with the PSR's calculation of Morehouse's Guidelines sentencing range as 97 to 121 months. However, the court imposed a downward-variance sentence of 84 months after considering Morehouse's age, mental health, and military record.

Morehouse timely appealed. He argues that the court erred in applying the two-level image-quantity enhancement and the five-level exchange-for-value enhancement.

## II.

"We review a sentence imposed by a district court for reasonableness, applying a deferential abuse of discretion standard." *United States v. Savage*, 885 F.3d 212, 225 (4th Cir. 2018). "A sentence is procedurally unreasonable if the district court committed a serious procedural error, such as improperly calculating the Guidelines range[.]" *United States v. Gillespie*, 27 F.4th 934, 944 (4th Cir. 2022). "In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009).

"[I]f a party repeats on appeal a claim of procedural sentencing error . . . which it has made before the district court, we review for abuse of discretion." *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010). And "[i]f we find such abuse, we reverse unless we conclude that the error was harmless." *Id.* We construe the Sentencing Guidelines using the familiar principles of statutory interpretation and look to the Guidelines commentary for interpretive assistance. *McManus*, 734 F.3d at 318.

7

III.

We begin with the heftier enhancement: the five-level exchange-for-value enhancement under § 2G2.2(b)(3)(B) of the Sentencing Guidelines. In applying this enhancement over Morehouse's objection, the district court looked to our 2013 decision in *United States v. McManus*, 734 F.3d 315. Morehouse argues that this was error because *McManus* does not provide the proper test for defendants, like him, who were sentenced after a 2016 amendment to the Guidelines took effect.

We agree that the 2016 Guidelines amendment abrogated our holding in *McManus* for defendants sentenced after the effective date of the 2016 Guidelines. In light of the new standard imposed by the 2016 Guidelines, the district court's application of the enhancement was an error, and that error was not harmless. Accordingly, we reverse the application of the five-level enhancement, vacate Morehouse's sentence, and remand for resentencing.

A.

The defendant in *McManus* was sentenced in October 2012 pursuant to the 2011 Sentencing Guidelines. At that time—and until the 2016 amendments were enacted—the Guidelines provided a five-level increase for distributing "material involving the sexual exploitation of a minor" where the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (2011).

Interpreting this language in *McManus*, we held that the plain meaning of "expectation" is something that "is reasonably likely to occur"—as distinct from a hope,

8

which is "at best merely possible." *McManus*, 734 F.3d at 319. As for "thing of value," we noted that "[t]o the extent that there is any dispute about the meaning of . . . that term[, it] is defined in the application notes." *Id.* Specifically, the commentary defined "thing of value" as "anything of valuable consideration" and noted that, "in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." U.S.S.G. § 2G2.2 cmt. n.1 (2011). We held that § 2G2.2(b)(3)(B) required the Government to show that the defendant "1) knowingly made child pornography in his possession available to others by some means, and 2) made his pornographic materials available for the specific purpose of obtaining something of valuable consideration, such as more pornography, whether or not he actually succeeded in obtaining the desired thing of value." *McManus*, 734 F.3d at 319.

We concluded in *McManus* that the enhancement did not apply to the defendant in that case. There, the defendant had created a shared folder containing child pornography on a "file-sharing computer program," which we held was sufficient to satisfy the first prong of the test. *Id.* at 317; *see id.* at 319, 322–23. But we concluded that the Government had not met its burden as to the second prong. The Government "submitted no evidence that [the defendant] distributed his files to any user as a barter or trade, that [the file-sharing program] enforces a rule that friends must make files available to each other, or that a strong custom has arisen within the [program's] community to that same effect." *Id.* at 322. Nor did the Government demonstrate that the defendant "screened possible friends [within the program] based on their likelihood of possessing valuable files before inviting them or

9

accepting their invitations." *Id.* Consequently, we held that the Government failed to show that the defendant "conditioned his decision to distribute his files on his belief that he would receive something of value in return." *Id.* at 319.

Were the *McManus* test still applicable, we would agree with the district court that the exchange-for-value enhancement applies to Morehouse's conduct in this case. Unlike in *McManus*, where the Government sought to rely on the nature of the computer program as circumstantial evidence "of the particular defendant's state of mind," here we have statements from Morehouse himself. *Id.* at 320. Notably, Morehouse conceded that he distributed child pornography, and that he did so "*in order to receive* other child pornographic images and videos" from other users. J.A. 124 (emphasis added). The district court was entitled to credit Morehouse's own statements during its factfinding at sentencing. *E.g.*, *United States v. Hicks*, 948 F.2d 877, 883 (4th Cir. 1991). And, crediting that statement, Morehouse 1) "knowingly made child pornography in his possession available to others" 2) "for the specific purpose of obtaining something of valuable consideration, such as more pornography." *McManus*, 734 F.3d at 319.

Morehouse argues that the district court could not rely on this admission because nobody believed his claim that he distributed pornography *in order to build a case against other distributors*. But that is of no moment. The district court credited his concession to the action of knowingly distributing child pornography *for the specific purpose of* obtaining more child pornography, which is all that is required under *McManus*. Whether or not the court believed his claim regarding his *reason for seeking child pornography* does not

10

impact those fundamental facts. So, if *McManus* applied to Morehouse's sentencing, we would affirm the application of the enhancement.

B.

But that is not the whole story, because in 2016 the pertinent Guideline was amended in key ways.[4] Because, as we conclude, the 2016 amendment conflicts with our holding in *McManus*, it "has the effect of changing the law in this [C]ircuit," and we must interpret § 2G2.2(b)(3)(B) anew for defendants like Morehouse who were sentenced after the amendment took effect.[5] *United States v. Goines*, 357 F.3d 469, 474 (4th Cir. 2004) (quoting *United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995)); *accord United States v. Williams*, 808 F.3d 253, 258 (4th Cir. 2015) ("We have . . . recognized the [Sentencing] Commission's power to override our precedent through amendments to the Guidelines.").

---

[4] In fairness to the district court, Morehouse only tangentially raised this argument below by citing the Sixth Circuit's opinion in *United States v. Oliver*, 919 F.3d 393 (6th Cir. 2019), and pointing to "the [Guideline's] new phrase[,] 'in exchange for,'" J.A. 121. That argument was, however, enough to preserve the issue for appeal. *See United States v. Robinson*, 744 F.3d 293, 300 n.6 (4th Cir. 2014).

[5] We have previously explained the distinctions between a "clarifying" amendment, which "merely clarifies what the Commission deems the guidelines to have already meant" and which "must be given effect at sentencing and on appeal, even when the sentencing court uses an edition of the guidelines manual that predated adoption of the amendment"; a "substantive" amendment, which "has the effect of changing the law in this [C]ircuit," "typically reflect[s] new policy choices by the Commission," and does not apply retroactively unless the Commission so provides; and "hybrid" amendments, which are clarifying amendments that we treat as substantive because they conflict with our precedent. *Goines*, 357 F.3d at 474 (internal quotation marks omitted). Thus, the different types of amendments differ in their retroactive effect. For purposes of this opinion, we need not determine into which category the 2016 amendment falls because it makes no difference here—Morehouse was sentenced after 2016 and plainly is entitled to sentencing under the amendment.

11

Beginning with the 2016 Guidelines Manual, and continuing through today,[6] § 2G2.2(b)(3)(B) has provided a five-level enhancement when "the defendant distributed [material involving the sexual exploitation of a minor] in exchange for any valuable consideration, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (2016). This language differs from the Guideline's previous reference to the "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (2015). The amendment thus replaces "for the receipt, or expectation of receipt" with "in exchange for," and it replaces "a thing of value" with "any valuable consideration."

The second alteration makes no difference for purposes of this case. The commentary, both before and after the amendment, has explained that the "thing or value" or "valuable consideration" can be—as here—"other child pornographic material." U.S.S.G. § 2G2.2 cmt. n.1 (2016); U.S.S.G. § 2G2.2 cmt. n.1 (2015).

But the first change is significant. Our opinion in *McManus* relied on the meaning of the former term, "expectation." *McManus*, 734 F.3d at 319. We noted that an expectation must relate to something that is "reasonably likely to occur." *Id.* And an "expectation" that distributing child pornography will lead to the receipt of further child pornography *could* be reasonable because one is in communication with a specific individual, but that is not a requirement—rather, the expectation could arise from the general practices of the program or website one is using. That is why, in *McManus*, we did not rest our holding solely on

---

[6] Morehouse was sentenced pursuant to the 2018 Guidelines Manual, which was in effect at the time of his sentencing in July 2020.

the fact that the Government "submitted no evidence that McManus distributed his files to any user as a barter or trade." *Id.* at 322. Rather, we also noted that the Government had failed to provide any evidence "that [the computer program] enforces a rule that friends must make files available to each other," "that a strong custom has arisen within the [program's] community to that same effect," or "that McManus screened possible friends based on their likelihood of possessing valuable files before inviting them or accepting their invitations." *Id.*

The 2016 amendment altered the meaning of the Guideline by replacing the phrase "for the receipt, or expectation of receipt" with the phrase "in exchange for." The plain meaning of an "exchange" is a trade. *See Exchange*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/exchange (last visited Apr. 19, 2022) (saved as ECF opinion attachment) (defining "exchange" as, among other definitions, "the act of giving or taking one thing in return for another" and "reciprocal giving and receiving"). A trade generally implies the existence of another, specified party with whom one has formed an agreement to make an exchange. The commentary confirms this understanding, explaining that the Guideline requires the Government to show that "the defendant agreed to an exchange *with another person* under which the defendant knowingly distributed *to that other person* for the specific purpose of obtaining something of valuable consideration *from that other person*, such as other child pornographic material[.]" U.S.S.G. § 2G2.2 cmt. n.1 (2016) (emphases added).

Seeking a way to maintain the earlier meaning of the Guideline, the Government correctly points out that "[a] person can 'agree' to do something unilaterally." Response

Br. at 20; *see* *Agree*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/agree (last visited Apr. 19, 2022) (saved as ECF opinion attachment) (defining "agree" in part as "to consent to as a course of action" and "to accept or concede something"). The Government thus contends that no "bilateral agreement" is required. Response Br. at 20. But that argument simply zeroes in on possible definitions of the word "agree," while disregarding the actual text of the exchange-for-value enhancement and the commentary. As discussed, that text makes plain that another party must be actively involved in an exchange with the defendant.[7]

Thus, the amendment specifically narrows the application of § 2G2.2(b)(3)(B), abrogating our holding in *McManus*. As we understood the enhancement at the time of that decision, it could involve a one-sided endeavor in which a defendant made child pornography available (whether to a specific person or to the world at large) in the expectation that he would receive more child pornography in return (whether from a specific person or from other, unidentified users). *See McManus*, 734 F.3d at 319 ("The Government must show that the defendant conditioned his decision to distribute his files *on his belief that* he would receive something of value in return." (emphasis added)).

Under the 2016 amendment, however, the enhancement can only apply to a two-sided exchange. It requires the Government to show that the defendant entered an agreement with a specific individual that the defendant would provide child pornography

---

[7] We do not mean to imply that the other party necessarily must be acting *truthfully* in agreeing to an exchange with the defendant. That question is not before us in this appeal, so we leave it for another day.

14

to that person in exchange for valuable consideration, such as additional child pornography. Our sister circuits agree. *See United States v. Oliver*, 919 F.3d 393, 401 (6th Cir. 2019) ("An 'exchange' is more exacting than a mere 'expectation of receipt' and, at the very least, requires an agreement or mutual understanding between two parties, rather than the defendant's personal belief or expectation."); *United States v. Halverson*, 897 F.3d 645, 651–52 (5th Cir. 2018) ("[T]he district court committed a significant procedural error by applying our holding from [a pre-amendment case] . . . instead of the amended Guideline," which "requires a court to find" that "the defendant agreed to an exchange with another person.").

To be sure, the amended Guideline does not eliminate either of the two factors we recognized in *McManus*, as it requires a defendant to have "knowingly distributed" child pornography "for the specific purpose of obtaining something of valuable consideration." U.S.S.G. § 2G2.2 cmt. n.1 (2016); *see McManus*, 734 F.3d at 319 ("[T]he Government must show that the defendant: 1) knowingly made child pornography in his possession available to others" 2) "for the specific purpose of obtaining something of valuable consideration, such as more pornography[.]"). Instead, the 2016 amendment *narrows* the first *McManus* factor and *adds* other requirements—requiring that the defendant "agreed to an exchange with another person" in order to receive something of value "from that other person," and that the defendant "knowingly distributed [the material] to that other person." U.S.S.G. § 2G2.2 cmt. n.1 (2016).

Accordingly, we agree with the two other circuits that have laid out tests for the enhancement after the 2016 amendment that, following that amendment, the appropriate

15

test is a four-part one, rather than the two-part test we set forth in *McManus*. Under the 2016 amendment, the Government must show that the defendant "(1) agreed . . . to an exchange with another person under which (2) the defendant knowingly distributed child pornography to that other person (3) for the specific purpose of obtaining something of valuable consideration (4) from that same other person."[8] *Oliver*, 919 F.3d at 403 (6th Cir.); *accord Halverson*, 897 F.3d at 652 (5th Cir.) (providing a similar four-part test).

The Government argues that the exchange-for-value enhancement was amended in 2016 solely to "address[] differing circuit approaches to peer-to-peer file sharing programs,"[9] and thus contends that the approach taken by the Sixth Circuit in *Oliver*—and the one we adopt here—"dramatically ratchet[s] up the requirements to prove the enhancement" beyond what "the relevant history" of the amendment supports. Response

---

[8] In *McManus*, we noted that the enhancement could apply "whether or not [the defendant] actually succeeded in obtaining the desired thing of value." *McManus*, 734 F.3d at 319. But this assertion may have arisen from the then-current Guideline's language, which covered the "receipt, *or expectation of receipt*," of child pornography. U.S.S.G. § 2G2.2(b)(3)(B) (2011) (emphasis added). Still, the Sixth Circuit has held that, even after the amendment, "the defendant need not have *received* the valuable consideration in order for the enhancement to apply." *Oliver*, 919 F.3d at 403–04 (emphasis added). Because the enhancement does not apply to Morehouse in any event, we leave this interpretive question for another day.

[9] "On peer-to-peer file-sharing networks, 'any file a user has downloaded to his computer is automatically accessible to others on the network when the user's computer is connected to the Internet.'" *United States v. Miltier*, 993 F.3d 267, 269 n.* (4th Cir. 2021) (quoting *United States v. Clarke*, 979 F.3d 82, 87 (2d Cir. 2020)); *accord* U.S.S.G. app. C, amend. 801 (Supp. 2021) ("[Peer-to-Peer] is a software application that enables computer users to share files easily over the Internet. These applications do not require a central server or use of email. Rather, the file-sharing application allows two or more users to essentially have access [to] each other's computers and to directly swap files from their computers. . . . Once the user has downloaded and set up the file-sharing software, the user can begin searching for files shared on the connected network using search keywords in the same way one regularly uses a search engine such as Google.").

Br. at 19. We disagree. The Sentencing Commission specifically noted that circuit conflicts related to the enhancement under § 2G2.2(b)(3)(B) "have arisen frequently, *although not exclusively*, in cases involving the use of peer-to-peer file-sharing programs or networks." U.S.S.G. app. C, amend. 801 (Supp. 2021) (emphasis added). In other words, the amendment was not solely targeted at issues arising in cases related to peer-to-peer programs. And indeed, "[a]s written, the enhancement makes no distinction between defendants who use peer-to-peer programs and defendants who directly engage with" other users. *Oliver*, 919 F.3d at 402.

Further, in discussing an amendment to the enhancement under § 2G2.2(b)(3)(F)—a general two-level enhancement where a defendant "knowingly engaged in distribution" of material involving the sexual exploitation of a minor—the Commission specified that it was "generally adopt[ing] the approach of the Second, Fourth, and Seventh Circuits." U.S.S.G. app. C, amend. 801. By contrast, in discussing the exchange-for-value enhancement under § 2G2.2(b)(3)(B), the Commission contrasted our opinion in *McManus* with a Fifth Circuit opinion,[10] but *did not indicate it was accepting either approach*. Rather, the Commission reiterated the centrality of the term "exchange," explaining that the Commission had "determined that the amendment [was] an appropriate way to account for

---

[10] *See United States v. Groce*, 784 F.3d 291 (5th Cir. 2015), *superseded by amendment as stated in Halverson*, 897 F.3d at 651. The disagreement between *McManus* and *Groce* pertained to whether the knowing use of peer-to-peer file-sharing networks satisfied § 2G2.2(b)(3)(B) automatically. *Compare McManus*, 734 F.3d at 322 (holding that a per se rule was "inappropriate" "based on the features of the system" at issue in that case), *with Groce*, 784 F.3d at 294 ("Generally, when a defendant knowingly uses peer-to-peer file sharing software, . . . he engages in the kind of distribution contemplated by § 2G2.2(b)(3)(B).").

the higher level of culpability when the defendant had the specific purpose of distributing child pornographic material *to another person in exchange for valuable consideration.*" U.S.S.G. app. C, amend. 801 (emphasis added).

For these reasons, we hold that the 2016 amendment abrogated our holding in *McManus* for those sentenced after the amendment's effective date, and that the appropriate test for sentencings conducted after the 2016 amendment is the four-part one laid out above.

## C.

Applying the proper test in this case, we conclude that the district court procedurally erred when it increased Morehouse's Guidelines range by five levels pursuant to the exchange-for-value enhancement.

The district court applied the enhancement because Morehouse admitted he had distributed images and videos of child pornography to other users and that he did so "*in order to receive* other child pornographic images and videos from . . . unidentified users." J.A. 124 (emphasis added). Those conclusions satisfy the third prong and part of the second prong of the revised test. But crucially, entirely absent from the district court's conclusions is the notion that Morehouse made *any* type of agreement with a specific person, as required to fully satisfy the first, second, and fourth prongs. Indeed, the concession relied upon by the district court notes that Morehouse expected to receive child pornography from

18

*unidentified users,*[11] rather than from a specific person with whom he had entered into an agreement.[12] *Id.*

Instead, the appropriate enhancement is only the two-level enhancement for "knowingly engag[ing] in distribution" under § 2G2.2(b)(3)(F). U.S.S.G. § 2G2.2(b)(3)(F) (2021). Typically, we would leave it to the district court to determine in the first instance whether an enhancement other than the one it previously applied would be appropriate. Here, however, the district court necessarily found that Morehouse knowingly engaged in distribution when it concluded that the Government had "satisf[ied] the requirements of *McManus*," J.A. 124–25, because the first *McManus* requirement is that the Government has shown that the defendant "knowingly made child pornography in his possession available to others by some means," *McManus*, 734 F.3d at 319. Even if the act of making something in one's possession available to others by some means is broader than distribution—a question we need not answer—that act necessarily includes distribution. Further, we agree with the district court that the Government satisfied its burden of proof on this point. *See supra* at 10. Accordingly, on remand, the district court should apply the two-level enhancement under § 2G2.2(b)(3)(F).

---

[11] We need not decide precisely what level of identification of another user is necessary—for example, whether the Government must cite the other user's legal name, or whether other identifying features like an IP address or a username would be sufficient—because here there has been no identification whatsoever.

[12] The Government argues that an agreement "is implied here by the fact that [Morehouse] *actually received images in return* for his overtures." Response Br. at 20. That is insufficient to sustain the Government's burden by a preponderance of the evidence, because the Government cites no facts to support the notion that Morehouse *agreed to an exchange* or received images *from the person he entered into an agreement with*. Nor has our review of the record revealed any such facts.

19

While "we will not vacate the [sentence] if the error was harmless, . . . the [G]overnment—as the beneficiary of the error—bears the burden of establishing that the error was harmless." *United States v. Brizuela*, 962 F.3d 784, 798 (4th Cir. 2020). And we have held that the Government fails to satisfy its burden where, as here, it fails to argue that even if the district court erred, the error was harmless. *Id.* at 798–99. Nevertheless, "we may address the issue on our own initiative." *Id.* at 798. But "we should avoid doing so when . . . the question of harmless error is close." *Id.* at 798–99.

Although we need not address harmlessness in this case because the Government failed to carry its burden when it declined to make any argument related to harmlessness in its brief, we opt to do so here because the matter is clear-cut: the district court's error was not harmless. With the five-level enhancement, Morehouse's total offense level was 30, and his advisory Guidelines range was 97 to 121 months. Had the district court instead applied the lesser two-level enhancement for knowing distribution under § 2G2.2(b)(3)(F), Morehouse's total offense level would have been 27, and his Guidelines range would have been 70 to 87 months.

Certainly, the district court granted Morehouse a downward variance and sentenced him to a term of imprisonment within the corrected range—84 months. But the district court believed it was giving Morehouse a sentence thirteen months *below* the advised minimum of 97 months. Employing the two-level enhancement instead of the five-level enhancement, Morehouse's sentence is actually at the *top* end of his Guidelines range. And nothing in the sentencing transcript indicates that the district court would have imposed the

20

same 84-month sentence regardless of the Guidelines calculation.[13] *See McManus*, 734 F.3d at 323 (holding a procedural Guidelines error was not harmless even though "the district court's [chosen] sentence [was] well below the bottom of th[e] corrected range" because we could not "say with certainty that the district court would not have sentenced [the defendant] to even less time in custody if it had used the proper starting point").

Accordingly, we conclude that the district court erred when it imposed the five-level exchange-for-value enhancement under § 2G2.2(b)(3)(B). Rather, the record supports only a two-level enhancement under § 2G2.2(b)(3)(F). We reverse the application of the five-level enhancement, vacate Morehouse's sentence, and remand for resentencing consistent with this opinion.

IV.

That leaves Morehouse's argument on appeal regarding the two-level image-quantity enhancement. Under § 2G2.2(b)(7)(A) of the Sentencing Guidelines, if the offense involved "at least 10 images, but fewer than 150," the base offense level should be increased by two. U.S.S.G. § 2G2.2(b)(7)(A) (2018). Morehouse objects to this enhancement because the Statement of Facts provided that "[l]ess than ten . . . images depicting child pornography were observed to be on [his] cellular phone." J.A. 49. He asserts that he "bargained for a specific statement of facts in exchange for his agreement to plead guilty, and should receive the benefit of that bargain." Opening Br. at 24.

---

[13] The Government, too, recommended a sentence "consistent with the low end of the applicable advisory guidelines range." J.A. 102. In light of this opinion, Morehouse's sentence is not consistent with that recommendation.

We do not reach the merits of this argument because Morehouse waived it by explicitly withdrawing it below. *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) ("A party who identifies an issue, and then explicitly withdraws it, has waived the issue." (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002))). And "when a claim is waived"—as opposed to forfeited[14]—"it is not reviewable on appeal, even for plain error." *Id.*; *see also United States v. Olano*, 507 U.S. 725, 733 (1993) (explaining that there is no "error" for purposes of Fed. R. Crim. P. 52(b) where a defendant "intentional[ly] relinquish[es] or abandon[s] . . . a known right" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

"Whether the waiver was valid is a matter of law that we review de novo." *Robinson*, 744 F.3d at 298. And here, Morehouse plainly waived his right to contest the quantity of images. In his written position paper submitted prior to sentencing, Morehouse repeatedly and explicitly stated that he was "withdrawing his objection to the [image-quantity] enhancement." J.A. 60; *accord* J.A. 62 ("[W]hile the Government explicitly stated in plea negotiations that they would not seek an enhancement for more than ten images and drafted a statement of facts to that effect, rather than risk losing the reduction for acceptance of responsibility,[15] Mr. Morehouse is withdrawing his objection to the two-level

---

[14] "Waiver is to be distinguished from forfeiture, which is the failure to make the timely assertion of a right. Courts may review a forfeited claim for plain error." *Robinson*, 744 F.3d at 298 (citation and internal quotation marks omitted).

[15] After Morehouse initially raised his objection to the quantity of images, the Probation Officer warned that if the court were to "determine that the defendant is falsely denying relevant conduct, his reduction for acceptance of responsibility should be removed." S.J.A. 220; *see* U.S.S.G. § 3E1.1 cmt. n.1(A) (2018) ("A defendant who falsely

22

enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(A).”). Further, at sentencing, Morehouse's counsel requested that the PSR be amended to “just simply say that he was in possession *of ten or more images*, because the [precise] number of images truly was in dispute.” J.A. 119 (emphasis added). “Having made a choice at sentencing, [Morehouse] cannot now contend that the district court erred by honoring that choice. He has waived the argument.” *Robinson*, 744 F.3d at 299 (concluding that the defendant waived his objection to the court's drug-quantity calculation).

## V.

For the foregoing reasons, we reverse the district court's application of the five-level exchange-for-value enhancement, vacate Morehouse's sentence, and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED*

---

denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous[.]”).

23