**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4190**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AMINTA A. SMITH, a/k/a Ashley Smith, a/k/a Angel Smith,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:18-cr-00107-MOC-DCK-1)

Argued:  September 16, 2022                    Decided:  November 15, 2022

Before GREGORY, Chief Judge, and NIEMEYER and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

**ARGUED:**   Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**   Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, Caryn D. Finley, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Aminta Smith ("Appellant") was convicted of 20 counts of aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. § 7206(2), and three counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). In this appeal, Appellant challenges the sufficiency of the evidence supporting her convictions, the district court's admission of non-expert summary witness testimony, two of her supervised release conditions, and the district court's judgment ordering immediate payment of restitution.

For the reasons below, we affirm the district court's denial of Appellant's motion for judgment of acquittal, admission of the summary witness testimony, and imposition of the supervised release condition prohibiting Appellant from seeking any extension of credit, unless authorized to do so in advance by the probation officer. However, we reverse and remand the imposition of the supervised release condition requiring Appellant to refrain from going to places where she knows controlled substances are illegally sold, used, or distributed and the order of immediate payment of restitution.

I.

Appellant's convictions stem from her involvement in three tax preparation businesses between 2010 and 2015. Specifically, in October 2009, Appellant started a tax preparation business known as Touch by Angels Tax Service ("TATS"). In order to be able to file returns electronically, a tax preparation business must have an Electronic Filing Identification Number ("EFIN"), which identifies the company to the Internal Revenue Service ("IRS"). In January 2010, the IRS received Appellant's application for an EFIN for TATS, in which she listed herself as the owner. The application also listed Benjamin

3

Smith ("Smith")[1] as an alternate contact for the business.  A month later, the IRS found Appellant unsuitable and denied her request for an EFIN for TATS.

After Appellant's EFIN application for TATS was denied, Smith obtained EFINs for two tax businesses: (1) Touch by Angels Accounting Services ("TAAS") and (2) Smith Tax & Insurance Group, LLC ("Smith Tax & Insurance").  In 2011 and 2012, Appellant received W-2's[2] from TAAS.  From 2013 through 2015, Appellant received W-2's from Smith Tax & Insurance.  On each of Appellant's W-2's, she listed her occupation as a tax preparer.

On March 18, 2019, a federal grand jury returned a 23-count superseding indictment, in which Appellant was charged with 20 counts of aiding and assisting in the filing of false tax returns, in violation of 26 U.S.C. § 7206(2), and three counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1) in connection with her involvement with TATS, TAAS, and Smith Tax & Insurance.

Counts one through 20 are based on Appellant's preparation of her clients' tax returns.  In short, counts one through 20 allege that Appellant assisted her clients in filing false tax returns in an effort to maximize their refunds. Counts 21 and 22 are based on Appellant's 2013–2014 personal tax returns.  Specifically, counts 21 and 22 allege that

---

[1] To clarify, throughout this opinion, references to "Smith" will mean Benjamin Smith and not Appellant.

[2] A W-2 is a form that taxpayers receive from their employers.  This document reports the employee's annual wages, taxes withheld, as well as other deductions, to the IRS for a specific tax year.

4

Appellant's tax returns are false because she underreported her income and failed to report the gross receipts for her tax business on a Schedule C of her tax return.[3] Count 23 is also based on Appellant's personal tax return but differs from counts 21 and 22 inasmuch as it only alleges that Appellant underreported her total income. This is so because Appellant did attach a Schedule C to her 2015 tax return, which reported $150 of gross receipts for TATS during the 2015 tax year.

At trial, the Government presented evidence demonstrating that Appellant prepared false tax returns for five individuals from 2011 to 2014. Appellant's former tax clients uniformly testified that their tax returns either: (1) included wages for places they never worked; (2) claimed credits for education expenses from colleges they did not attend or expenses they did not incur; or (3) included business income for businesses that did not exist or for amounts that were not provided to Appellant. As a result of these tactics, Appellant's former clients received inflated refunds, ranging from $2,775 to $9,515 per tax year.

Appellant also prepared her own tax returns. The charges against Appellant relative to her personal tax returns are rooted in the Government's contention that she failed to report her tax business on her 2013 and 2014 tax returns and underreported the income she received from her tax business on her 2013, 2014, and 2015 tax returns. At trial, the Government offered evidence in support of its theory that Appellant was the actual owner

---

[3] Per the testimony adduced at trial, a Schedule C is a tax form that a business uses to report income or losses to the IRS. This form is required if the business only has one owner.

of all three tax businesses -- namely, TATS, TAAS, and Smith Tax & Insurance -- even though Smith was listed as the sole owner of TAAS and Smith Tax & Insurance.

Specifically, the Government called IRS Service Center Representative, Kristy Morgan ("Morgan"), who testified about the IRS's requirements for obtaining an EFIN. Morgan also testified that Smith Tax & Insurance was listed as a company associated with Appellant's application for an EFIN for TATS. On this point, Morgan explained that Smith Tax & Insurance was listed in the "doing business as" column of Appellant's EFIN application for TATS.

The Government also called IRS Special Agent Nicholas Pompei ("Agent Pompei"), who interviewed Appellant as part of the criminal investigation. Notably, Agent Pompei testified that when he asked Appellant about her employment, she told him that she had been the sole owner of TATS since 2009.

The jury also heard from Meshawn Jean-Louis ("Jean-Louis"), who is a Problem Resolution Specialist in Santa Barbara Bank and Trust's ("Santa Barbara") tax products group. Santa Barbara is a bank that the IRS uses to disburse refunds to taxpayers. Jean-Louis testified that Santa Barbara's records indicated that at different time periods, both Appellant and Smith were listed as the contact for the EFINs associated with TAAS and Smith Tax & Insurance. During Jean-Louis's testimony, the Government introduced evidence detailing the tax preparation fees earned by TAAS between 2011 and 2012 and by Smith Tax & Insurance from 2013 through 2015.

The Government's last witness at trial was IRS Agent Teresa Archie ("Agent Archie"), who testified as a non-expert summary witness. Prior to her testimony, Agent

6

Archie sat through all of the testimony and evidence presented in the Government's case-in-chief. Initially, Agent Archie testified about two of Appellant's former clients' tax returns. During this line of questioning, Agent Archie explained that if the tax returns included false information with respect to income, it would affect the IRS's ability to calculate the correct tax due for those tax years. At this point, counsel for Appellant objected that "we [do not] need [Agent Archie] to just regurgitate what the jury has already heard through another witness or to opine on the ultimate issues in the case." J.A. 271.[4]

After hearing from the parties, the district court expressed some concern with the line of questioning, stating, "I think most of what you're doing is fine. I don't have any problem with it. It may be a couple of times she's getting over the line. Obviously it's going to false information which is going to impair the Internal Revenue Service." J.A. 272–273. Counsel for Appellant interjected and offered:

> I think this might be cured if we just get a limiting instruction, that, to the extent that her testimony conflicts with the testimony or other evidence that has come in earlier, that the jury is to regard the testimony from the other witnesses as the evidence.

*Id.* at 273.

Hearing no objection from the Government, the court gave the limiting instruction. Having suggested the limiting instruction, Appellant did not object to it and never objected again to the testimony of Agent Archie. At the conclusion of the trial, the court also gave a jury instruction on summary witnesses, which stated:

---

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

> Charts and summaries prepared by various witnesses were admitted into evidence and were shown to you during the trial for the purpose of explaining facts that are allegedly contained in books, records, or other documents which may or may not also be in evidence in the case. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.

J.A. 370. Appellant did not object to this jury instruction.

Agent Archie also testified about the Earned Income Tax Credit ("EITC").[5] Specifically, Agent Archie testified that all of the clients referenced in the indictment received the maximum or near the maximum level for the EITC during the relevant time period. After reviewing several charts detailing where each client fell with respect to the maximum EITC, Agent Archie noted that false items on Appellant's clients' returns would affect their EITC.

The last topic Agent Archie covered during her testimony was the personal tax returns of Appellant and Smith. First, Agent Archie reviewed the Government's demonstrative exhibit 145, which is a summary chart establishing that while Smith Tax & Insurance earned more than $300,000 in tax preparation fees from 2013 to 2015, Appellant did not report a Schedule C business on her 2013 or 2014 tax returns. The chart also indicates that Appellant reported only $150 in business income on a Schedule C attached to her 2015 tax return. Next, Agent Archie testified about 2015 bank records offered into

---

[5] As explained at trial, the EITC is a tax credit for lower income individuals or families with qualifying children. This credit can be applied towards tax liability and if there is leftover credit, it increases the amount of refund that a taxpayer would receive.

evidence by the Government, which indicated that Appellant was the sole signatory authority on the Smith Tax & Insurance bank account where the preparer fees were deposited. Further, Agent Archie testified that Appellant paid for personal expenses using funds from Smith Tax & Insurance's bank account and repeatedly transferred money from the tax business account to her personal account. And Agent Archie testified that in March 2015, Smith Tax & Insurance issued a check to Smith for "biweekly pay," which noted on the memo line that it was "okay per Aminta Smith." J.A. 285. On redirect, Agent Archie testified that Smith's tax returns were prepared by an individual named "A. Smith," which presumably was Appellant. Agent Archie also testified that Smith did not report a Schedule C business on his 2013 or 2014 tax returns, nor did he file a tax return for 2015 or 2016.

Ultimately, Appellant was convicted on all counts. Following the verdict, Appellant filed a motion for judgment of acquittal with respect to counts 21–23, arguing that the Government failed to present sufficient evidence to establish that Appellant was required to report business income (or loss) in 2013 and 2014 (counts 21 and 22), or that Appellant underreported her gross receipts in 2015 (count 23). The district court denied the motion. In doing so, the district court explained that with respect to counts 21 and 22, the Government introduced "more than sufficient evidence for a reasonable juror to find that these three businesses -- [TATS], [TAAS], and Smith Tax [&] Insurance -- were different in name only and all reflected the same preparation business, for which [Appellant] was the owner and which she should have reported on her 2013 and 2014 tax returns." J.A. 445. As for count 23, the district court concluded, "The Government met its burden of proving that [Appellant] underreported gross receipts or sales from her tax preparation

9

business." *Id*. at 450.  In determining that there was sufficient evidence to support the jury's verdict on count 23, the district court emphasized that "The evidence of the flow of money and [Appellant's] dominion and control over the funds is further proof that she was the owner of the tax preparation business, no matter what nominee name it went by." *Id*. at 451.

At sentencing, the district court imposed a sentence of 30 months of imprisonment, which was below the Sentencing Guidelines range of 41 to 51 months, to be followed by a one year term of supervised release, with the standard conditions of supervised release adopted by the Western District of North Carolina.  Appellant raised several objections to the standard conditions.  However, only the following two supervised release conditions are relevant to this appeal: (1) Appellant shall not go to a place where she knows controlled substances are illegally sold, used, or distributed; and (2) Appellant shall not seek any extension of credit, unless authorized to do so in advance by the probation officer.  The district court overruled Appellant's objections to these conditions.

Lastly, before finalizing its sentence, the district court ordered Appellant to pay $171,017 in restitution to the IRS.  The district court entered a written judgment memorializing its sentence, which stated that payment of restitution was due immediately.

Appellant timely filed a notice of appeal in which she challenges the district court's denial of her motion for judgment of acquittal with respect to counts 21 through 23, the district court's admission of Agent Archie's summary witness testimony, two of her supervised release conditions, and the district court's judgment ordering immediate payment of restitution.

10

II.

In considering Appellant's challenge to the sufficiency of the evidence, "we review the district court's denial of [a] [d]efendant's motion for judgment of acquittal *de novo*." *United States v. Kimble*, 855 F.3d 604, 613 (4th Cir. 2017).  In doing so, "we ask whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020) (emphasis in original) (internal quotation marks omitted); *see also United States v. Haas*, 986 F.3d 467, 477 (4th Cir. 2021) ("Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." (internal quotation marks omitted)).

As for Appellant's quarrel with the district court's admission of Agent Archie's testimony, "[w]e review evidentiary rulings for an abuse of discretion, affording substantial deference to the district court." *United States v. White*, 810 F.3d 212, 227 (4th Cir. 2016). However, "[w]hen a criminal defendant fails to object to the district court's evidentiary rulings at trial, we review for plain error." *United States v. Walker*, 32 F.4th 377, 394 (4th Cir. 2022).

Lastly, with respect to Appellant's objections to the district court's imposition of certain supervised release conditions, "[w]e ordinarily review conditions of supervised release for abuse of discretion." *United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021).

11

III.

A.

Appellant first argues that the evidence presented at trial was insufficient to sustain her convictions for filing false personal tax returns (counts 21–23).[6] To obtain a conviction for filing false tax returns, the Government is required to prove "that the document in question was false as to a material matter, that the defendant did not believe the document to be true and correct as to every material matter, and that [s]he acted willfully with the specific intent to violate the law." *Kawashima v. Holder*, 565 U.S. 478, 483 (2012) (internal citations omitted). Appellant contends that the Government failed to prove that her tax returns contained a material falsehood with the specific intent to violate the law.

When examining the materiality requirement, we have explained, "[u]nder § 7206(1) the test of materiality is whether a particular item must be reported in order that the taxpayer estimate and compute [her] tax correctly." *United States v. Aramony*, 88 F.3d 1369, 1384 (4th Cir. 1996) (quoting *United States v. Null*, 415 F.2d 1178, 1181 (4th Cir. 1969)). Counts 21 through 23 are based on Appellant's conduct during the 2013–2015 calendar years. The Government's evidence concerning this time frame focuses on Smith Tax & Insurance. For example, Appellant's W-2's established that during the 2013, 2014, and 2015 calendar years, she provided tax return preparation services for Smith Tax & Insurance. In addition, the Santa Barbara records detailing the tax preparation fees earned

---

[6] Appellant did not appeal the district court's denial of the motion for judgment of acquittal with regard to counts one through 20.

in 2013, 2014, and 2015, all refer to one entity -- Smith Tax & Insurance. Accordingly, in this case, materiality turns on two issues: (1) whether Appellant was required to report the business income from Smith Tax & Insurance on a Schedule C attached to her tax returns; and (2) whether her failure to report such income rendered her tax returns materially false.

1.

Starting with the reporting issue, as noted above, at trial, the Government called IRS Service Center Representative Morgan, who testified that if a business has one owner, it should report its income and any deductions on a Schedule C. In addition, Morgan testified about the IRS's "suitability" requirements for obtaining an EFIN as well as Appellant's application for an EFIN for TATS, which was rejected by the IRS. Morgan also testified that after the IRS denied Appellant's application for an EFIN for TATS, an individual with the same last name as Appellant, Benjamin Smith, obtained EFINs for the tax businesses where Appellant worked, that is, for TAAS and Smith Tax & Insurance. Lastly, Morgan testified that Smith Tax & Insurance was listed as a company associated with Appellant's application for an EFIN for TATS. To put a fine point on the association between these two purportedly different companies, Morgan explained that Smith Tax & Insurance was listed in the "doing business as" column of Appellant's EFIN application for TATS.

In addition, when asked about her employment, Appellant admitted to Agent Pompei that she was the sole owner of TATS, which she started in October 2009. And although the Government only presented bank records for the 2015 calendar year, those records revealed that Appellant was the sole signatory authority on the bank account where the preparer fees were deposited for Smith Tax & Insurance and that Appellant regularly

13

transferred money from the tax business account to her personal account. Finally, the Government presented evidence which casts doubt on any suggestion that Smith was more than a mere nominee for TAAS and Smith Tax & Insurance. Specifically, the Government presented testimony establishing that Smith did not report a Schedule C business on his 2013 or 2014 tax returns, there is no record of Smith filing a tax return in 2015 or 2016, and Smith's tax returns were prepared by an individual named "A. Smith."

All told, there is sufficient evidence supporting the jury's conclusion that Appellant was required to report the income from Smith Tax & Insurance on a Schedule C to her tax returns. Indeed, Appellant's statement that she has been the sole owner of a tax business since 2009 coupled with the evidence indicating that the purported owner of Smith Tax & Insurance, Benjamin Smith, did not report a Schedule C business during the relevant time period is sufficient for the jury to conclude that Appellant was the sole owner of all three iterations of the tax businesses at issue, and thus, was required to report the income from those businesses on a Schedule C to her tax returns -- yet she did not do so.

2.

Turning to the question of whether this omission rendered Appellant's tax returns materially false, there is no dispute that Appellant did not report any business income from Smith Tax & Insurance on her 2013, 2014, or 2015 tax returns. It is also undisputed that Smith Tax & Insurance received over $300,000 in fees for Appellant's work during that time period. Having already determined that there is sufficient evidence to support an inference that Appellant was the actual owner of Smith Tax & Insurance, we also conclude that Appellant's failure to report Smith Tax & Insurance's business income on a Schedule

14

C to her tax returns rendered her tax returns materially false. *See United States v. Holland*, 880 F.2d 1091, 1096 (9th Cir. 1989) (stating "any failure to report income is material"), *cited with approval in Aramony*, 88 F.3d at 1385.

3.

As for the willfulness requirement, here, there is substantial evidence from which a jury could infer that Appellant intentionally falsified her personal tax returns. On this point, the Government presented evidence indicating that the manner in which Appellant falsified her clients' tax returns is instructive on the issue of how she falsified her own tax returns. Specifically, as noted above, Appellant's former tax clients testified at trial that their tax returns: (1) listed wages for places they never worked; (2) claimed credits for education expenses from colleges they did not attend or expenses they did not incur; and (3) listed income for businesses that did not exist or for amounts that were not provided to Appellant. This testimony established that Appellant repeatedly included false line items on her clients' tax returns in order to maximize their tax refunds.

Yet Appellant maintains that the Government has not established that she engaged in a pattern of falsifying tax returns because "[i]t is not a 'pattern' to commit different acts for different benefits." Appellant's Reply Br. at 11. According to Appellant, this is so because under the Government's theory she "*underreported* her personal income to avoid paying taxes on her personal returns and . . . *overreported* income on clients' returns to maximize their Earned Income Tax Credit." *Id*. (emphases supplied). This is a distinction without a difference. The evidence supports the Government's theory of the case -- namely, that Appellant used her experience as a tax preparer to game the system.

15

Consequently, it makes sense that her methods to achieve the desired result -- i.e., to avoid tax liability and/or maximize tax refunds -- would depend upon the circumstances. This evidence, coupled with Appellant's experience as a tax preparer, is sufficient for the jury to infer that Appellant willfully falsified her personal tax returns. *See United States v. Diamond*, 788 F.2d 1025, 1030 (4th Cir. 1986) (finding the defendant's education and professional experience relative to tax matters supported trial court's conclusion that he intended to file false returns).

Accordingly, because there is substantial evidence establishing that Appellant intentionally filed false personal tax returns, the district court did not err in denying Appellant's motion for judgment of acquittal on counts 21–23.

B.

Appellant next lodges two challenges to the district court's admission of Agent Archie's testimony. In doing so, Appellant argues generally that Agent Archie's testimony should have been excluded. In addition, Appellant contends that Agent Archie's testimony usurped the province of the jury.

1.

Appellant first argues that the district court erred by overruling her objection to Agent Archie's testimony. As noted above, at trial, counsel for Appellant objected that "we [do not] need [Agent Archie] to just regurgitate what the jury has already heard through another witness or to opine on the ultimate issues in the case." J.A. 271. At the outset, we must first address whether Appellant waived her objection to Agent Archie's testimony. If we answer that question in the affirmative, we need not reach the merits of

16

the district court's ruling on the objection. *See United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) ("when a claim is waived, it is not reviewable on appeal, even for plain error"). Here, Appellant argues that her request for a limiting instruction did not waive her objection to Agent Archie's testimony because she never explicitly withdrew her objection.

In support of this proposition, Appellant cites *United States v. Rodriguez*, in which the First Circuit said, "[a] party who identifies an issue and then explicitly withdraws it[] has waived the issue." 311 F.3d 435, 437 (1st Cir. 2002). Appellant also focuses on her counsel's statement that a limiting instruction *might* cure her objection to Agent Archie's testimony, which in her view suggests that the defense preserved its objection to the testimony.

While we have cited *Rodriguez* for the proposition that when a party has explicitly withdrawn an objection, it is waived for the purposes of appeal, *see Robinson*, 744 F.3d at 298, this is not to say that explicit withdrawal is the only way that a party can waive an objection, or that explicit withdrawal is required for waiver. In contrast, there is support for the argument that a party may waive an objection without explicitly withdrawing it. In *United States v. Robinson*, we held that the defendant's choice to proceed with sentencing constituted waiver because he "consciously abandoned" his objection to the drug-quantity calculation by choosing to continue with sentencing using only the evidence before the court at that time rather than postponing the matter to allow the parties to gather evidence relevant to his objection. *Id*. Here, Appellant's conscious abandonment of her objection is more apparent than in *Robinson*.

17

Indeed, it was Appellant, not the court or the Government, who introduced the idea of a limiting instruction as a possible resolution to her objection. Appellant contends that the district court overruled her objection to Agent Archie's testimony when it stated, "I don't have any problem with it." Appellant's Opening Br. at 15 (citing J.A. 272). However, a balanced reading of the record establishes that the district court's comment was not a ruling on the objection but instead was made as part of the dialogue on the objection. As noted above, after stating that it did not have any problem with most of the testimony, the court explained, "It may be a couple of times she's getting over the line. Obviously it's going to false information which is going to impair the Internal Revenue Service." J.A. 272. In response, the prosecutor offered to ask the question a different way and Appellant's counsel offered a solution by way of a curative instruction. The court then fashioned the limiting instruction with the help of the parties. And it is undisputed that Appellant did not object to the limiting instruction, nor did Appellant object to the jury instructions on summary witnesses. Accordingly, we conclude that Appellant withdrew her objection to Agent Archie's testimony by proposing a curative instruction before the district court ruled on the objection, and, as such, she waived this issue by neither objecting to the curative instruction that was given nor objecting again to the testimony.

Moreover, the limiting instruction given at the time of Agent Archie's testimony clearly instructed the jury that they were permitted to determine what weight, if any, to give Agent Archie's summary testimony. This, coupled with the final jury instruction as to summary witnesses, was sufficient to cure any potential issues with Agent Archie's testimony.

18

Beyond that, any error relative to the objection was harmless because "[w]ithout evidence to the contrary, we follow the presumption that the jury obeyed the limiting instructions." *United States v. Johnson*, 54 F.3d 1150, 1161 (4th Cir. 1995).

2.

Next, Appellant argues for the first time on appeal that the district court erred by permitting Agent Archie to draw an impermissible inference that Smith Tax & Insurance's tax preparation fees could be attributed to her personally. Specifically, the question and answer Appellant contests is:

> Q: I'm now showing you Demonstrative Exhibit 145. What does this chart show?
>
> A: The green bars show the amount of total fees earned according to Santa Barbara records by Aminta Smith. The little red bars you have 0, 0, and 150, are the amounts that Ms. Smith reported on her Schedule C of her tax return.

J.A. 281. According to Appellant, this testimony usurped the province of the jury by drawing an impermissible inference that the gross receipts of Smith Tax & Insurance are attributable to Appellant. As explained above, the Government's demonstrative exhibit 145 is a summary chart, which established that Smith Tax & Insurance earned more than $300,000 in preparer fees from 2013 to 2015 but Appellant did not report a Schedule C business on her 2013 or 2014 tax returns, and only reported $150 in business income on a Schedule C to her 2015 tax return.

At trial, the Government sought permission to publish several demonstrative exhibits -- including demonstrative exhibit 145 -- which it maintained would assist Agent Archie in her testimony and the jury's understanding of it. As to demonstrative exhibit

19

145, the district court specifically asked "[d]oes the defense – has the defense seen and do you object to any of these?" J.A. 276.  To which counsel for Appellant replied, "I don't think so. Let me just verify. *No objection*." *Id.* (emphasis supplied).  Because Appellant did not object to either the demonstrative exhibit *or the testimony*, we review for plain error.  *See United States v. Walker*, 32 F.4th 377, 394 (4th Cir. 2022) ("When a criminal defendant fails to object to the district court's evidentiary rulings at trial, we review for plain error.").  "To prevail under this standard, a defendant must show that (1) there was error (2) that was plain and (3) affected substantial rights, and that (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Johnson*, 945 F.3d 174, 177 (4th Cir. 2019) (alterations adopted and internal quotation marks omitted). "A plain error normally affects a defendant's substantial rights if the error was prejudicial, meaning that it affected the outcome of the district court proceedings." *Walker*, 32 F.4th at 394 (internal quotation marks omitted).

Here, the trial court did not err by failing to strike Agent Archie's testimony, sua sponte*,* with respect to demonstrative exhibit 145.  A review of the contested question and answer reveals that Agent Archie did not make any inferences in connection with the summary chart.  Instead, Agent Archie highlighted what the jury could see for themselves on the chart.  Accordingly, Agent Archie's testimony is squarely within the parameters of Federal Rule of Evidence 611(a), which allows parties to use summaries or charts "to facilitate the presentation and comprehension of evidence already in the record." *United States v. Oloyede*, 933 F.3d 302, 311 (4th Cir. 2019) ("Rule 611(a) charts are not evidence themselves; they are used merely to aid the jury in its understanding of the evidence that

20

has already been admitted, by, for example, revealing inferences drawn in a way that would assist the jury."(alterations adopted and internal quotation marks omitted)).

In any event, even if the district court did err in failing to strike this testimony sua sponte, any such error was harmless. *See United States v. Caldwell*, 7 F.4th 191, 204 (4th Cir. 2021) ("An error is harmless if it's highly probable that it did not affect the judgment.") (quoting *United States v. Burfoot*, 899 F.3d 326, 340 (4th Cir. 2018)). As explained above, the jury was presented ample evidence from which it could conclude that Appellant was required to report the gross receipts from Smith Tax & Insurance on a Schedule C to her tax returns but failed to do so (counts 21 through 23). The jury also heard from Appellant's former clients who described Appellant's pattern of reporting false information on their tax returns (counts 1 through 20). Because there is sufficient evidence -- untethered to demonstrative exhibit 145 -- supporting the jury's verdict, we conclude that it is highly probable that any error with respect to demonstrative exhibit 145 did not affect the judgment.

## C.

Lastly, Appellant argues that the district court erred by failing to adequately respond to her objections to certain supervised release conditions imposed at sentencing. Specifically, Appellant takes issue with two supervised release conditions: (1) Appellant shall not go to a place where she knows controlled substances are illegally sold, used, or distributed (the "Drug Condition"); and (2) Appellant shall not seek any extension of credit, unless authorized to do so in advance by the probation officer (the "Credit Condition").

"District courts have a duty to explain the sentences they impose." *United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020); *see also United States v. Boyd*, 5 F.4th 550, 557 (4th Cir. 2021) ("courts are expected to make individualized assessments based on the facts before them and explain sentences in a way that allows for meaningful appellate review and promotes the perception of fair sentencing" (internal quotation marks omitted)). "Failure to provide such an explanation constitutes procedural error." *McMiller*, 954 F.3d at 676. And, "a court may only impose conditions that (1) are reasonably related to the goals of deterrence, public protection, and rehabilitation; (2) affect no greater deprivation of liberty than is reasonably necessary to achieve those goals; and (3) are consistent with any pertinent policy statements issued by the Sentencing Commission." *Boyd*, 5 F.4th at 557.

1.

Starting with the Drug Condition, Appellant asserts that the district court erred in imposing this condition because it is unconstitutionally vague and Appellant does not have a history of drug use. As to the vagueness argument, we conclude that the district court adequately explained its reasoning for rejecting this argument. Specifically, the court noted that this condition is not unconstitutionally vague because it is limited to circumstances where Appellant *knowingly* goes to places where she *knows* substances are sold, distributed, or administered.

Although we conclude that the district court did not err in rejecting Appellant's argument that the Drug Condition is unconstitutionally vague, we conclude that the record evidence establishes that the district court erred in imposing this condition because

22

Appellant does not have a history of drug use. Indeed, the lack of support for the imposition of the Drug Condition is confirmed by the fact that the district court sustained Appellant's objection to a supervised release condition which required drug testing on the basis that it was inapplicable given that Appellant does not have a history of drug use. And yet, because the district court imposed the Drug Condition, perhaps there is some reason for this inconsistency. But at this point, because there is nothing in the record which suggests that the Drug Condition reasonably relates to Appellant's history and characteristics or the goals of deterrence, protection of the public, and rehabilitation, and thus, we conclude that the district court abused its discretion by imposing the Drug Condition. *See Boyd*, 5 F.4th at 559 (noting that when a district court fails to address a defendant's nonfrivolous objections head on, "we will vacate the sentence and remand for resentencing unless context makes the court's reasons for rejecting the nonfrivolous objections patently obvious").

2.

Turning to the Credit Condition, Appellant objected to this condition on the ground that it is inconsistent with the Sentencing Guidelines, which only recommend this condition when a defendant is not in compliance with a payment plan. In overruling Appellant's objection, the district court explained that this condition is necessary given the large amount of restitution Appellant owes combined with the fact that this provision is only in effect for one year. Because there is no dispute that Appellant is obligated to pay more

23

than $170,000 in restitution[7] and the record reflects that Appellant was unable to pay a fine at sentencing, we conclude that the district court did not abuse its discretion in imposing this condition.

IV.

For the reasons set forth above, we affirm the district court's denial of Appellant's motion for judgment of acquittal, admission of the summary witness testimony, and imposition of the supervised release Credit Condition.  However, as to the Drug Condition and order of immediate payment of restitution, we reverse and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

---

[7] The parties agree that the district court erred by ordering immediate payment of restitution.  The parties also agree that the appropriate remedy is to modify or amend the judgment to correct the error.  Thus, we vacate the district court's order requiring immediate payment of restitution and remand the case with instructions to modify the judgment so that Appellant does not owe restitution until she begins her term of supervised release.